In the
United States Court of Appeals
For the Seventh Circuit

No. 99-1691

United States of America,

Plaintiff-Appellee,

v.

Darwin Montana,

Defendant-Appellant.


Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 98 CR 54--Milton I. Shadur, Judge.


Argued October 29, 1999--Decided December 16, 1999



   Before Posner, Chief Judge, and Flaum and Diane P.
Wood, Circuit Judges.

   Posner, Chief Judge.  The defendant was convicted
of bank robbery and related offenses and given a
very long sentence--almost 30 years. James Dodd
committed the actual robbery; Montana drove the
getaway car. Dodd pleaded guilty, and testified
at Montana's trial, as Montana's witness, that
Montana had not known that Dodd was planning to
rob the bank. Shortly before the end of the
trial, Dodd gave Montana's lawyer a note for
Montana's mother, who after she read it told the
lawyer that the note demanded money in exchange
for Dodd's having testified favorably to Montana.
The following morning, a deputy U.S. marshal
heard Dodd tell Montana to tell Montana's father
that "it's going to be $10,000" for the favorable
testimony. The district judge allowed the marshal
to testify to what he had heard. He also
permitted the jury to learn that Dodd had passed
a note to Montana's mother, but not that
Montana's lawyer had been the courier.

   Montana complains primarily about his lawyer's
having passed the note from Dodd, which he says
made the lawyer's representation of him
incompetent, and about the marshal's being
permitted to testify to Dodd's out-of-court
statement, which he claims was inadmissible
hearsay. The note has a twofold significance so

far as the adequacy of Montana's representation was concerned. First, had the jury learned that Montana's lawyer had conveyed a demand for a bribe, it might have inferred that the lawyer was complicit in the demand, and this would have totally discredited him in the jurors' eyes. This danger was averted by the judge's refusal to allow the jury to discover the lawyer's role in the passing of the note. Second, however, the lawyer's discovery that he had been the instrument for conveying a bribe demand might conceivably have intimidated him into providing less than vigorous representation for Montana, fearing that if he were too effective the government would retaliate by accusing him of being complicit in the bribe demand, that is, of knowing what was in the note. In so arguing Montana is appealing to a line of cases which hold that a lawyer who is under investigation by the Department of Justice has a conflict of interest in representing a person whom the Department is prosecuting if the lawyer is afraid of retaliation should he press his client's defense too vigorously. Thompkins v. Cohen, 965 F.2d 330, 332 (7th Cir. 1992); cf. United States v. Levy, 25 F.3d 146, 156 (2d Cir. 1994); United States v. Cancilla, 725 F.2d 867, 870 (2d Cir. 1984).

The mere fact of being under investigation by the prosecutors of the lawyer's client does not create a fatal conflict, we have held, United States v. Hubbard, 22 F.3d 1410, 1418 (7th Cir. 1994); Thompkins v. Cohen, supra, 965 F.2d at 332; Cerro v. United States, 872 F.2d 780, 785-86 (7th Cir. 1989), though the Eleventh Circuit appears to differ. See United States v. McLain, 823 F.2d 1457, 1464 (11th Cir. 1987) (acknowledged, on other grounds, as defunct, in United States v. Watson, 866 F.2d 381, 385 n. 3 (11th Cir. 1989)). An actual fear of retaliation must be shown. See Thompkins v. Cohen, supra, 965 F.2d at 332. It was not shown here and anyway Montana's lawyer was not under investigation. He may have feared that he would be investigated if he didn't pull his punches, but this is pure speculation which Montana has made no effort to substantiate. There is not only no indication that the lawyer pulled his punches; there is no hint that anyone suspected him of having read the note before transmitting it to Montana's mother. It may seem, may indeed be, irregular for a lawyer to be conveying a message from a jailhouse inmate not his client to his client's mother, since prisons rightly insist on inspecting ongoing mail that is not privileged. But remember that Dodd was a friendly witness, whose testimony had sought to exonerate Montana. It was natural though inappropriate and quite possibly improper for Montana's lawyer to want to accommodate Dodd

to the extent of carrying a note from him. He had no reason to believe that the note was a demand for a bribe, and so far as appears he was not in jeopardy of being prosecuted for having passed the note. As in Stoia v. United States, 109 F.3d 392, 395 (7th Cir. 1997), there is no basis for an inference that he was intimidated by a threat of prosecution if he didn't pull his punches in defending his client.

Montana also complains about his lawyer's decision to call Dodd as a witness, for he proved to be uncontrollable and while attempting to exonerate Montana made various inculpatory statements. He also repeated statements that Montana had made to him, and this opened the door for the government to impeach the out-of-court declarant (Montana) with his extensive criminal record. United States v. Stefonek, 179 F.3d 1030, 1036 (7th Cir. 1999); United States v. Robinson, 783 F.2d 64, 67 (7th Cir. 1986);  United States v. Moody, 903 F.2d 321, 328 (5th Cir. 1990). But to criticize Montana's lawyer for calling Dodd is rank Monday morning quarterbacking. Dodd was the only witness Montana had, and he tried to exonerate him. Had Montana's lawyer failed to call Dodd, Montana would have a stronger case of ineffective assistance of counsel than he has. Dodd's testimony actually helped Montana, at least a little, for the jury acquitted him of the charge of having conspired with Dodd to rob the bank.

The only other issue that requires discussion (Montana's challenge to the sentence has no possible merit) is the admissibility of the marshal's testimony that Dodd had told Montana that the price of Dodd's favorable testimony was $10,000. The government argues that it was admissible as a "verbal act," see, e.g., United States v. Thomas, 86 F.3d 647, 653 n. 12 (7th Cir. 1996); United States v. Robinzine, 80 F.3d 246, 252 (7th Cir. 1996); Twin City Fire Ins. Co. v. Country Mutual Ins. Co., 23 F.3d 1175, 1182 (7th Cir. 1994); United States v. Murphy, No. 98-2035, 1999 WL 756846, at *3-*4 (1st Cir. Sept. 30, 1999); United States v. Roach, 164 F.3d 403, 410 (8th Cir. 1998), thus echoing the linguist's distinction between performative and illocutionary utterances. The latter narrate, describe, or otherwise convey information, and so are judged by their truth value (information is useful only if true--indeed is information only if it is true); the former--illustrated by a promise, offer, or demand--commit the speaker to a course of action. Performative utterances are not within the scope of the hearsay rule, because they do not make any truth claims. Had the marshal overheard Dodd tell Montana, "your father has promised me $10,000," Dodd's overheard

statement would have been hearsay, because its value as evidence would have depended on its being truthful, that is, on such a promise having actually been made. But what in fact was overheard was merely a demand--in effect, "give me $10,000"--and so the only issue of credibility was whether the marshal was reporting the demand correctly, and his testimony was not hearsay.

Affirmed.