In the
United States Court of Appeals
For the Seventh Circuit

No. 00-3939

United States of America,

Plaintiff-Appellee,

v.

Rickey B. Wallace,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Illinois.
No. 97-CR-30006-01-WDS--William D. Stiehl, Judge.

Argued May 10, 2001--Decided January 9, 2002

   Before Posner, Easterbrook, and Diane P.
Wood, Circuit Judges.

   Diane P. Wood, Circuit Judge.  Rickey B.
Wallace was a big-time marijuana dealer
in Southern Illinois. Over the years, he
was responsible for transactions
amounting to a whopping 13,471 kilograms
of that substance, according to one of
his co-conspirators, Ubaldo Diaz II. Law
enforcement authorities caught up with
him in early 1997, when he was indicted
along with several others for conspiring
to distribute "divers amounts of
marihuana" from approximately 1987
through September 1997, in violation of
21 U.S.C.    841(a)(1) and 846. He
pleaded guilty, but then thought better
of matters after he learned that he would
be held responsible for such a large
quantity. His motion to withdraw his
guilty plea became complicated by the
near-simultaneous discovery that his
first lawyer allegedly had a serious
conflict of interest. In the end, the
district court denied Wallace's motion
(filed by a new lawyer) to withdraw the
plea and sentenced Wallace to 240 months'
imprisonment. Wallace appeals, and we
affirm.

I

   At the time of his guilty plea, Wallace
was 50 years old and the owner of a

roofing business in Southern Illinois. Represented by attorney Clifford Schwartz, Wallace stipulated in writing that between 1987 and November of 1994, he was a leader of an organization that distributed marijuana in and around Granite City, Illinois. Wallace admitted that during this period he regularly received large quantities of marijuana from suppliers in Texas, including co-conspirator Diaz. Wallace also admitted that on two different occasions in 1994 (July and October), law enforcement officials seized from Diaz separate 800-pound shipments of marijuana (a total of over 700 kilograms) that were intended for Wallace.

In his plea agreement, Wallace acknowledged that his offense was subject to the United States Sentencing Guidelines and that his sentence would be determined by the court. The plea agreement noted that the sentence would depend on the amount of marijuana the court found should be counted as relevant conduct, and that if the amount exceeded 100 kilograms, he was facing a sentence ranging from 5 to 40 years. Finally, Wallace confirmed in the plea agreement that there were no agreements or promises relating to the length of his sentence.

On February 3, 1998, prior to accepting Wallace's plea, the district court conducted a lengthy Rule 11 colloquy. In the course of that exchange, Wallace stated under oath that he had discussed the indictment and the evidence against him with his attorney, Schwartz. Turning to the plea agreement, the court asked Wallace to confirm the fact that the plea agreement contained no commitments about his expected sentence. Asked if he understood this, Wallace replied, "Yes, sir." The court then again asked whether "anyone made any other or different promise or assurance of any kind to you," and Wallace replied, "No, sir."

The court then explained to Wallace that "the penalty provided by law for the offense to which you are pleading is governed by the amount of controlled substance found to constitute your relevant conduct. Here we have no agreement as to that amount. That is something that I will have to determine at a later date." After reviewing all the possible relevant conduct ranges and the

potential sentences that could attach, the court asked, "Now do you understand all of those possible consequences of your plea?" Wallace said that he did. He also affirmed that he had "discussed how the sentencing guidelines might apply in his case" with Schwartz. Finally, Wallace agreed that he understood that the court "will not be able to determine the applicable guideline range in your case until after a presentence report has been prepared."

Next, the government spelled out what it was prepared to prove at trial, including the two 800-pound shipments of marijuana that government agents seized from Diaz in 1994. Following the recitation the court asked, "Mr. Wallace, is what [the government] has just told us substantially correct?" Wallace responded: "Would that total be 1,600 pounds?" Clarifying, the court answered, "Well, as I understand it, the amount constituting your relevant conduct is not agreed to, but that there, in this recital of the facts . . . [the government] talked about . . . two shipments of 800 pounds. So is what he told us substantially correct?" Wallace agreed that it was, and also agreed that the stipulation of facts was accurate.

After entering his guilty plea, but before the conclusion of the change of plea hearing, Wallace interrupted the court to ask whether at sentencing the court would "judge what can be put in?" He asked, "When the government puts on what I consider to be lies that has been told, then you are going to judge that, is that true?" The court answered that "[i]t will be just like a trial. The government is going to put on evidence. . . . . You are going to have the right, or your attorney will have the right, to cross-examine their witnesses. Your side is going to have the right to put on witnesses . . . and after all of that, then I have to make a determination." Wallace then asked, "We're almost having a trial then, aren't we?," and the court replied that "[s]ome of these sentencings come down to a mini trial. All it is is a trial over the amounts. . . . Does that answer your question?" Wallace said it did.

Following Wallace's guilty plea, the United States Probation Office prepared a

presencing report. Relying largely on information provided by Diaz, the report found Wallace's relevant conduct during the seven years of the conspiracy to include marijuana transactions totaling 13,471 kilograms (almost 30,000 pounds). Apparently surprised by the relevant conduct recommendation, Wallace filed, through Schwartz, a motion to withdraw his guilty plea.

This was where matters veered from the beaten track. Before the court had an opportunity to rule on Wallace's motion, the government moved to disqualify Schwartz. It accused Schwartz of either witnessing or participating in suborning perjury and witness tampering by Wallace. In particular, it alleged that while Wallace was out on bond, he and Schwartz had gone to Rio Grande City, Texas, to interview members of Diaz's family. While there, Wallace told Diaz's sister Isabel that they had to "shut [her brother] up." He asked Isabel to lie about her relationship with Wallace and told Diaz's father that he should testify that Diaz was lying. In exchange, Wallace offered to pay the family $50,000. The government argued that whether or not Wallace was allowed to withdraw his guilty plea, Wallace's actions on the trip to Rio Grande City were relevant to the case, and Schwartz would potentially be put in the position of being called as a witness against his client. Both Schwartz and Wallace objected to the government's motion and submitted affidavits denying the supporting allegations. The district court held a hearing on the motion to disqualify and, in a subsequent written order, disqualified Schwartz on the ground asserted by the government.

Following Schwartz's disqualification, attorney John O'Gara entered his appearance on behalf of Wallace. O'Gara immediately filed an amended motion to withdraw Wallace's guilty plea. Whereas the Schwartz motion to withdraw the plea had argued that the government was impermissibly shifting theories from a single conspiracy to multiple conspiracies, the O'Gara motion focused principally on the conflict of interest between Schwartz and Wallace that (it argued) tainted the original guilty plea proceedings. Schwartz, Wallace now urged, had a powerful motive to induce Wallace to plead guilty, because by avoiding a

trial, Schwartz could avoid having his unethical and potentially criminal conduct come to light. In his amended motion, however, Wallace made clear that he was not conceding any wrongdoing while visiting Diaz's family: "The defendant by this motion does not admit to the government's allegations in its motion to disqualify Mr. Schwartz." According to Wallace, "[t]he actual conflict of interest in this case is created by the government's allegations and implications arising from the allegations." In his amended motion to withdraw, Wallace also alleged for the first time that Schwartz did not fully apprise him of the potential sentence he faced and that Schwartz was confused about the issue. According to Wallace, Schwartz promised that he would only serve five years and that "only because of this inducement did he enter a plea of guilty."

The district court denied Wallace's motion without an evidentiary hearing. It rejected Wallace's argument that because his lawyer may have had a conflict of interest at the time of the plea, this was enough in itself to invalidate the plea of guilty. Instead, the court examined Wallace's plea agreement and the earlier Rule 11 colloquy for any evidence that Wallace's plea was not knowing or voluntary. It concluded that Wallace's repeated sworn statements that he understood that there was no agreement as to sentence belied his claim that Schwartz promised him he would receive five years. Not finding any other evidence of involuntariness or lack of knowledge, and noting that Wallace was not actually asserting that Schwartz improperly pressured or compelled him to enter into the guilty plea, the court saw no grounds for permitting Wallace to withdraw his plea.

Wallace responded to the court's ruling with a motion seeking an evidentiary hearing on the issues raised in his amended motion to withdraw his guilty plea. He made an offer of proof in which he stated that he would testify at an evidentiary hearing that Schwartz and the U.S. Attorney both led him to believe he would receive a five-year sentence and that if he pleaded guilty, one of his co-conspirators, Linda Adams, would be "exonerated." The court granted a hearing on the limited issue of what Schwartz had

told Wallace about the potential sentence he faced if he elected to plead guilty.

At the hearing, Wallace was the only witness who testified. His statements there amounted to a 180-degree shift from his earlier testimony at the Rule 11 hearing. He claimed that he had not discussed the terms of his plea agreement with Schwartz, that he had not read the plea documents, and that Schwartz did not discuss the sentencing guidelines with him. He testified that he did not understand how relevant conduct would affect his sentence. And he testified that Schwartz had promised him a five-year sentence. The district court was unimpressed. In its order again denying Wallace's motion to withdraw his plea, the court concluded that Wallace's new testimony simply "was not credible." Revisiting the conflict issue, the court supplemented its earlier reasoning with the observation that if Schwartz and Wallace had, as the government alleged, intimidated and attempted to bribe the Diaz family, Wallace was well aware of Schwartz's conflict when he entered his plea and had thus effectively waived his Sixth Amendment right. (If Schwartz had really done nothing, as Wallace was also asserting, then there would have been no conflict that might have tainted his advice.)

The district court held a sentencing hearing on November 1, 2000. Wallace withdrew all objections to the presentence report, but he argued that he should not be sentenced to a term longer than his life expectancy. The court rejected this argument. Wallace also mentioned the Supreme Court's then-recent decision in Apprendi v. New Jersey, 530 U.S. 466 (2000), in order to "save the issue for appeal." The court sentenced Wallace to 240 months and five years of supervised release.

II

Wallace's first three arguments on appeal involve his motion to withdraw his guilty plea. We review the district court's decision denying such a motion for abuse of discretion. United States v. Milquette, 214 F.3d 859, 861 (7th Cir. 2000). The court's factual findings about the existence (or not) of a fair and just reason to withdraw the plea stand unless

they are clearly erroneous. United States v. Messino, 55 F.3d 1241, 1247 (7th Cir. 1995).

Federal Rule of Criminal Procedure 32(e) provides that, prior to sentencing, a defendant may be permitted to withdraw his guilty plea for any "fair and just" reason. Defendants do not have an absolute right to withdraw a plea, United States v. Pike, 211 F.3d 385, 388 (7th Cir. 2000), but a defendant is entitled to withdraw his plea if he can demonstrate that it was not entered into knowingly and voluntarily. United States v. Ellison, 835 F.2d 687, 692-93 (7th Cir. 1987) (lack of voluntariness is a fair and just reason for withdrawing a guilty plea).

Wallace first argues that because Schwartz labored under a conflict of interest, Wallace received ineffective assistance of counsel and thus his plea was not voluntary. In broad terms, it is true that a guilty plea entered by a defendant who has received ineffective assistance of counsel is generally deemed to be involuntary. Hill v. Lockhart, 474 U.S. 52, 56 (1985). It is also true that under certain circumstances, a defense attorney who has an actual or a potential conflict of interest renders ineffective assistance. Cabello v. United States, 188 F.3d 871, 875 (7th Cir. 1999). But the link between these two elements--the conflict of interest, and the ineffective assistance--must be demonstrated before the defendant is entitled to withdraw his plea on that basis.

A defendant alleging ineffective assistance must demonstrate both that her attorney's performance fell below an objective standard of reasonableness and that she was prejudiced by this deficient representation. Strickland v. Washington, 466 U.S. 668, 687 (1984). In the typical case, establishing prejudice requires demonstrating that absent the attorney's deficient performance there is a reasonable likelihood that the outcome of the proceedings would have been different. United States v. Henry, 933 F.2d 553, 561 (7th Cir. 1991). Because "loyalty to her client is among the most basic of an attorney's duties and [because of] the near impossibility of measuring the precise effect on the defense of representation corrupted by a

breach of this duty," however, it is easier to satisfy Strickland's prejudice requirement in a conflict of interest case. Cabello, 188 F.3d at 875.

A defendant alleging a conflict of interest can satisfy the prejudice requirement in one of two ways. If the trial judge knew or should have known that a potential conflict of interest existed and did not adequately address the issue with the defendant, then we will presume prejudice. Lipson v. United States, 233 F.3d 942, 945 (7th Cir. 2000). Alternatively, if the trial judge was not put on notice of a potential conflict, following Cuyler v. Sullivan, 446 U.S. 335, 350 (1980), a court will presume prejudice "if the defendant demonstrates that her counsel actively represented conflicting interests and that the conflict adversely affected the counsel's performance." Cabello, 188 F.3d at 875; see Cuyler, 446 U.S. at 348.

In this case, the government's motion to disqualify Schwartz was the first sign the court had of any conflicts Schwartz might have with Wallace. As the court implicitly recognized, there were two possible areas of conflict. If the government's allegations of Schwartz's participation in witness-tampering were true, then Schwartz had an actual conflict throughout the proceedings, including when he advised Wallace regarding his guilty plea. Even if the government's allegations were not true, however, the mere fact that Schwartz was charged with wrongdoing created the potential for his interests to conflict with Wallace's, and it certainly created a potential public perception of impropriety. The district court disqualified Schwartz based only on these potential future conflicts. It expressed no opinion on whether the evidence supported the government's charges against Schwartz and thus whether Schwartz had an actual conflict at the time Wallace pleaded guilty.

Before the district court, Wallace argued that Schwartz had an actual conflict at the time he advised Wallace regarding his plea. This is generally a claim made under Cuyler. See Cabello, 188 F.3d at 874. To prevail, Wallace had to "demonstrate with a reasonable degree of specificity that a conflict actually

existed," Henry, 933 F.2d at 561, and that the conflict adversely affected his representation. Wallace did not attempt to meet these burdens before the district court. Instead, he maintained that an actual conflict arose solely from the "implications" of the government's theory of what happened in Rio Grande City and that the mere possibility of an adverse impact on Wallace's representation was enough to establish a Sixth Amendment violation. In other words, as the district court construed it, Wallace took the position that the possibility of a conflict was, by itself, enough to establish a per se Sixth Amendment violation.

On appeal, Wallace again argues for a per se rule, but he does not cite Cuyler or offer an argument for why its standards should not apply here. Wallace argues instead that our opinion in Stoia v. United States, 22 F.3d 766 (7th Cir. 1994), compels a ruling in his favor. We disagree. In Stoia we expressly applied Cuyler and required that the defendant demonstrate both the existence of an actual conflict and an adverse impact on his representation. Unlike Wallace, Stoia proved that at the relevant times his attorney had an actual conflict of interest that arose out of a plea agreement that the attorney had entered into with the government. There was no dispute as to the existence of this plea agreement nor was there any dispute as to the competing interests it created for Stoia's attorney. In contrast, Wallace never demonstrated that Schwartz actually participated in any wrongdoing while in Rio Grande City. While this may have been one of the theories behind the government's motion and thus initially its burden, it became Wallace's burden for purposes of the motion to withdraw the plea. The court made no finding on that question, and Wallace submitted an affidavit in which he specifically denied that the events alleged by the government occurred.

Perhaps more importantly, even with the finding of an actual conflict, the Stoia court went on to review the defendant's evidence of adverse impact on his representation. Finding none, it rejected his ineffective assistance of counsel claim. In this case, however, Wallace has put forth no actual evidence of an

adverse impact. The only evidence to which Wallace points is his testimony at the plea withdrawal hearing that Schwartz promised him a five-year sentence. The district court was correct in this case to reject Wallace's new stance on credibility grounds and to hold Wallace to his earlier sworn statements.

Wallace also relies on United States v. Cancilla, 725 F.2d 867 (2d Cir. 1984), for the proposition that Schwartz's assistance was per se ineffective and that he is thus entitled to withdraw the plea. Briefly, Cancilla held that specific evidence of adverse impact on representation is not necessary, and that the court would find a Sixth Amendmentviolation whenever there is a reasonable possibility that the defendant's attorney engaged in the defendant's wrongdoing. See also United States v. Fulton, 5 F.3d 605 (2d Cir. 1993). But this court, in Cerro v. United States, 872 F.2d 780 (7th Cir. 1989), has already rejected the Cancilla rule. In Cerro, the defendant's attorney was implicated in the defendant's wrongdoing, and the defendant argued for Cancilla's per se rule. This court declined to apply Cancilla because the evidence on which the defendant relied to implicate his attorney "did not clearly establish" his involvement in criminal activity and because, even if it did, the Cancilla rule would require us to accept the "disingenuous and incongruous" argument that the defendant received ineffective assistance on the basis of a conflict that the defendant was well aware of long before trial. Id. at 785. See also United States v. Montana, 199 F.3d 947 (7th Cir. 1999), which held that the burden is on the defendant to demonstrate that his attorney actually did fear prosecution, and that absent evidence that the attorney actually "pulled his punches," no inference of intimidation could arise. Id. at 949.

To the extent that Wallace is implicitly inviting us to reject Stoia, Cerro, and Montana, and to adopt the Cancilla approach, we decline the overture. (We are aware that the Supreme Court has under consideration the case of Mickens v. Taylor, 240 F.3d 348 (4th Cir. 2000) (en banc), cert. granted, 121 S. Ct. 1651 (2001), and that Mickens may throw some light on the burden a petitioner like

Wallace has to prove adverse effect and prejudice under Cuyler, when an actual conflict of interest was present. Anything we hold in this case is obviously subject to modification, depending upon the outcome of Mickens.) Montana, consistently with Cuyler, requires that the defendant show some adverse effect on his representation stemming from his counsel's conflict. As we have already explained, Wallace failed to do so. Because we can resolve Wallace's case this way, we need not delve into some potentially troublesome questions that could arise in other situations. For example, requiring Wallace to demonstrate that Schwartz had an actual conflict at the time Wallace entered his guilty plea would require Wallace to put forward potentially incriminating evidence prior to sentencing; that evidence could at a minimum lead to a higher sentence, a sentence enhancement for obstruction of justice, or additional criminal charges. Such a requirement might have Fifth Amendment implications, and it might not suffice to protect the defendant's Sixth Amendment right to conflict-free counsel. Asking a defendant to prove a crime in which she is implicated would condition her ability to vindicate her right toconflict-free counsel on a self-incriminating statement. But on the record here, the district court properly rejected Wallace's claim that his Sixth Amendment rights were violated, and it did not abuse its discretion in denying the motion to withdraw the plea on the basis of Schwartz's alleged actual conflict.

Wallace next argues that he should have been permitted to withdraw his guilty plea because he did not understand the consequences of that plea. This argument borders on the frivolous, and we reject it. Wallace is trying to overturn credibility findings made by the district court, and in the process he is also denigrating the solemnity of the Rule 11 proceeding. See United States v. Stewart, 198 F.3d 984, 986-87 (7th Cir. 1999).

The next arrow in Wallace's quiver is Apprendi. He argues that his plea was not knowing and voluntary because the indictment did not specify a quantity of marijuana and the court did not inform him during the Rule 11 colloquy that the

government would have to prove drug quantity beyond a reasonable doubt. Wallace did not object to these omissions during the plea colloquy, nor did he raise the issue in either of his motions to withdraw his plea. He mentioned Apprendi during sentencing but made no argument to the district court. He merely stated that he wanted "the Seventh Circuit to consider the impact of Apprendi v. New Jersey on this case." This is of course not enough to preserve an issue for appellate review. We will thus review Wallace's Apprendi claim only for plain error. United States v. Nance, 236 F.3d 820, 824 (7th Cir. 2000).

Prior to accepting a defendant's guilty plea, a district court is expected to ensure that a defendant understands the elements of the crime to which he is admitting. United States v. Ranum, 96 F.3d 1020, 1024 (7th Cir. 1996). Since Apprendi, it has been clear that to the extent that drug quantity affects a defendant's statutory maximum sentence, it is an aspect of the crime that should be specified in the indictment and must be proven beyond a reasonable doubt. Wallace was sentenced to 20 years. Under the Sentencing Guidelines, in order to receive a sentence for conspiracy to distribute marijuana that is greater than five years but less than forty, the defendant's crime must involve at least 100 kilograms of marijuana. 21 U.S.C. sec. 841(b)(1)(B)(vii). There was thus error in both Wallace's indictment and in the plea colloquy. In order to satisfy the plain error standard, however, the mistakes below must have "seriously affect[ed] the fairness, integrity, or public reputation of [the] judicial proceedings." Johnson v. United States, 520 U.S. 461, 467 (1997). In this case there was no such effect. Wallace has never denied his involvement in the two transactions totaling 1,600 pounds, or over 700 kilograms, of marijuana. To the contrary, he admitted to them under oath, both in his stipulation of facts and during the plea colloquy, and conceded at sentencing that the government could prove at least these two transactions beyond a reasonable doubt. Under these circumstances the Apprendi errors in the indictment and plea colloquy do not entitle Wallace to withdraw his plea. United States v. Gilliam, 255 F.3d 428, 434-35 (7th Cir. 2001) (indictment error

not grounds for withdrawal where defendant admitted under oath to necessary drug quantity); Lee v. United States, 113 F.3d 73, 75 (7th Cir. 1997) (permitting withdrawal of plea only where change in law casts doubt on factual sufficiency of plea).

Finally, Wallace challenges his sentence as unconstitutional because it exceeds his life expectancy. Even assuming for purposes of argument that Wallace adequately established his life expectancy at sentencing, this claim need not detain us for long. Wallace's theory has its origin in United States v. Martin, 63 F.3d 1422 (7th Cir. 1995). Whatever the language of Martin may have suggested, we have since been very clear that its holding is limited to the particular statute and unique circumstances of that case. Moreover, we have rejected the applicability of Martin's holding to convictions and sentences imposed under 21 U.S.C. sec.sec. 841(a)(1) and 846. See United States v. Robbins, 197 F.3d 829, 852 (7th Cir. 1999).

III

Because the district court acted within its discretion to deny Wallace's motion to withdraw his guilty plea, and because there was no error relating to the length of the sentence Wallace received, the judgment of the district court is AFFIRMED.