**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Horacio BADILLO, a/k/a Jose Lopez, a/k/a Josecio Lopezlo, and Rodrigo Torres, Jr., Defendants–Appellants.**

Nos. 02–1151, 02–1715.

United States Court of Appeals,
Seventh Circuit.

Argued March 5, 2003.

Decided April 11, 2003.

Rehearing En Banc Denied July 9, 2003.

Before MANION, DIANE P. WOOD, and EVANS, Circuit Judges.

## ORDER

These consolidated appeals were brought by two men who were caught unloading 3248 pounds of marijuana in a Chicago warehouse. One of the appellants, Rodrigo Torres, pleaded guilty to drug conspiracy and distribution charges, though apparently the district court later dismissed the distribution count and entered a judgment of conviction only on the conspiracy count. Torres filed a notice of appeal because he is unhappy with his sentence of 120 months' incarceration.

His appointed counsel, however, now seeks to withdraw because he believes there are no nonfrivolous arguments for appeal.

The other appellant is Horacio Badillo, who was convicted after a jury trial of the same charges. Badillo is displeased that he was sentenced to a total of 235 months' incarceration because, in his view, the drug quantity was overstated and he was merely a bit player in the conspiracy.

## I. Rodrigo Torres

### A. Background

On January 13, 2000, police arrested Torres and several others in a warehouse as they were unloading 3248 pounds of marijuana. Torres had been paid $300 to unload the drugs, with the promise of more cash on the back end. A federal grand jury returned a two-count indictment charging him with conspiring to possess marijuana with intent to distribute, 21 U.S.C. §§ 846, 841(a)(1), and with possessing approximately 3248 pounds of marijuana with intent to distribute, *id.* § 841(a)(1). Torres decided to enter blind guilty pleas to both counts, but the district court's handling of these pleas was confusing. At times it looks as if Torres was pleading guilty to only one offense, not two. Curiously, these irregularities were not addressed by counsel in his *Anders* brief.

In her presentence investigation report, the probation officer recommended that Torres's sentences be based on 1473 kilograms of marijuana. She also assigned him six criminal history points, placing him in criminal history category III and yielding a potential sentencing range of 87 to 108 months. But the probation officer also noted that he was subject to a ten-year mandatory minimum under § 841(b)(1)(A)(vii) because the quantity of marijuana exceeded 1000 kilograms. And because Torres had more than one crimi-

nal history point, he was not eligible for the safety valve under 18 U.S.C. § 3553(f)(1) and U.S.S.G. § 5C1.2, which would have allowed the court to depart from the mandatory minimum. There was some discussion by the district court and by the government at the plea colloquy *that* Torres might be eligible for the safety valve, and thus a possible sentencing range of 57 to 71 months. But because he was statutorily ineligible, that discussion became irrelevant.

Torres moved for a downward departure on the ground that criminal history category III significantly overrepresented his criminal history. Given the safety valve possibility, the district court was initially inclined to grant the request in order to make him eligible for it. At the court's request, however, the parties researched the issue, and both sides agreed that the court did not have the authority to depart downward by erasing criminal history points. The court then sentenced Torres to 120 months' incarceration and five years' supervised release, and imposed a $3,500 fine and $200 in special assessments. Although the PSR was prepared for both counts, the court said nothing about multiple terms of prison and supervised release (or them being concurrent), but did impose $100 special assessments on each count.

There is more confusion. Even though Torres pleaded guilty to both counts, the judgment states that count two was dismissed on the motion of the United States. But the record does not indicate any motion to dismiss count two by the government. Consequently, Torres was convicted only of conspiracy. And although counsel repeatedly states that Torres received concurrent sentences, there is no evidence of that in the record, except that the district court erroneously imposed two special assessments. But despite these irregularities, we agree with counsel that Torres's appeal should be dismissed because he would be unable to establish plain error.

## B. Analysis

■ Torres's appointed counsel has moved to withdraw under *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), because he is unable to identify a nonfrivolous issue for appeal. Torres responded to counsel's motion, *see* Circuit Rule 51(b), and we confine our review of the record to the potential issues identified in counsel's brief and in Torres's response. *See United States v. Tabb*, 125 F.3d 583, 584 (7th Cir.1997) (per curiam).

■ Counsel first examines whether Torres could challenge the voluntariness of his guilty plea on the basis that the district court failed to comply with Fed.R.Crim.P. 11. Torres did not ask the court to allow him to withdraw his plea; therefore, only plain error could justify relief. *See United States v. Vonn*, 535 U.S. 55, 122 S.Ct. 1043, 1046, 152 L.Ed.2d 90 (2002). Despite this, counsel has rightly evaluated the potential issue because Torres now wants to withdraw his plea. *See United States v. Knox*, 287 F.3d 667, 671 (7th Cir.2002).

Counsel concludes that a challenge to Torres's guilty plea would be frivolous, and we agree, though only because this court's review would be for plain error. The district court informed Torres of his right to maintain a plea of not guilty, and explained the various rights that he was giving up by pleading guilty. *See* Fed.R.Crim.P. 11(c)(3) and (4). The government presented to the court a specific factual basis that adequately supported each essential element of the drug offense, *see* Fed. R.Crim.P. 11(f), and Torres agreed that the government would be able to prove the scenario presented. The court also questioned Torres to ensure that he was not

pressured or coerced to plead guilty, *see* Fed.R.Crim.P. 11(d), and informed him that his sworn testimony at the plea colloquy could be used against him in a future perjury prosecution, *see* Fed.R.Crim.P. 11(c)(5).

■■■ Counsel selected only one infirmity in the plea colloquy–the district court's failure to disclose that the jury would have to find the quantity of marijuana beyond a reasonable doubt. Counsel correctly notes that the court was required to do so because the amount of marijuana attributed to him (1473 kilograms) impacted his statutory maximum. *United States v. Wallace*, 276 F.3d 360, 369 (7th Cir.), *cert. denied*, 536 U.S. 924, 122 S.Ct. 2592, 153 L.Ed.2d 781 (2002). We agree with counsel that any challenge on this ground would be frivolous because Torres would not be able to establish plain error. To prevail, Torres would have to establish that the court's omission affected the fairness, integrity, or public reputation of the criminal proceeding, which he cannot do. When Torres pleaded guilty, he admitted under oath to helping unload the specific amount of marijuana (3248 pounds/1473 kilograms) attributed to him, thus negating any potential constitutional concern regarding the burden of proof.

■■ But the plea colloquy was flawed in other ways. Counsel essentially rubber-stamps the propriety of various aspects of the colloquy–whether Torres understood the nature of the charges, if the district court adequately informed him of the possible penalties he faced, and whether it properly explained how the sentencing guidelines applied to his case. *See* Fed. R.Crim.P. 11(c)(1). Throughout the plea colloquy, the government and the court gave conflicting information about whether Torres was pleading guilty to one count or two, and whether he was eligible for the safety valve departure. And the court

suggested that his sentence would be within a range from 57 to 71 months–though it was careful to couch this range as a probability but not a given. Despite these errors, we do not believe Torres would be able to establish plain error as articulated by this court in *United States v. Driver*, 242 F.3d 767 (7th Cir.2001), *cert. denied*, 535 U.S. 926, 122 S.Ct. 1294, 152 L.Ed.2d 207 (2002). Torres did not move to withdraw his plea, and even though he has now indicated his desire to do so, at no point has he asserted that he has "any plausible defense that he could advance at trial." *Id.* at 771. Torres admitted that he committed the crime, and he has never asserted otherwise; consequently, he cannot show that failure to provide relief would cause a miscarriage of justice to justify plain error relief. *Id.* And he could not have been harmed by the "one count or two" confusion regarding his pleas and conviction. The court entered judgment only on the count to which he plainly intended to plead guilty and dismissed the other count.

■ Counsel also did not discuss another Rule 11 omission–the district court did not admonish Torres concerning the effects of supervised release. Fed. R.Crim.P. 11(c)(1). But any such challenge would be frivolous because the error was harmless. Torres could have received a life sentence and he was informed of that fact; therefore, the prison term he received plus his term of supervised release did not exceed the maximum imprisonment allowable by statute. *See United States v. Schuh*, 289 F.3d 968, 975 (7th Cir.2002).

■ Counsel next examines whether Torres could challenge his sentence because the amount of marijuana was not charged in count one of the indictment. Under this court's precedent, drug quantity must be specified in the indictment if it

affects the statutory maximum. *See Wallace*, 276 F.3d at 369. Here, the district court's finding that Torres was responsible for 1473 kilograms had an impact on the statutory maximum–the default statutory maximum sentence for a marijuana conspiracy violation without regard to quantity is five years, 21 U.S.C. § 841(b)(1)(D). Counsel, however, correctly notes that Torres would not be able to make a non-frivolous argument that this error was plain. Again, there is no dispute that Torres was involved with 1473 kilograms. *See Wallace*, 276 F.3d at 369.

■■■■ Finally, counsel and Torres examine whether the district court correctly concluded that it could not alter his criminal history score to render him eligible for the safety valve departure. But any such argument would be frivolous. Torres's trial counsel waived appellate review of the issue by agreeing with the government's position that the court lacked the authority to do so. *See United States v. Harris*, 230 F.3d 1054, 1058–59 (7th Cir.2000). Counsel therefore evaluates whether Torres can assert that his trial counsel was ineffective for conceding the point. But as counsel correctly points out, that claim also would be frivolous–district courts cannot change the calculations that form the basis of a sentencing range; instead, they only may depart from the guideline range that results from those calculations. *See, e.g., United States v. Penn*, 282 F.3d 879, 881–82 (6th Cir.2002). Therefore, the court did not have the authority to change his criminal history points to make Torres eligible for the safety valve.

## II.   Horacio Badillo

Badillo likewise was arrested for unloading marijuana at the Chicago warehouse. But unlike Torres, who was accountable only for the marijuana that was unloaded at the site, Badillo was sentenced to 235 months' incarceration for being involved with a much greater amount. On appeal he argues that the district court erred by denying his request for a minimal or minor role adjustment under U.S.S.G. § 3B1.2, and by attributing to him too much marijuana in calculating his sentences. We do not agree.

### A.   Background

A jury convicted Badillo of one count of conspiring to possess marijuana with intent to distribute, 21 U.S.C. §§ 846, 841(a)(1), and with possessing approximately 3248 pounds of marijuana with intent to distribute, *id.* § 841(a)(1). Although Badillo was convicted of dealing 3248 pounds, the government asked the court to consider a much greater amount as relevant conduct. The probation officer agreed, concluding that he should be accountable for 16,248 pounds (7370 kilograms)–the stash unloaded at the warehouse, plus another 13,000 pounds from 13 previous loads. This amount placed his base offense level at 34, *see* U.S.S.G. § 2D1.1(c)(3) (greater than 6600 pounds but under 22,000 pounds), and his total offense level at 36. Badillo objected to this portion of the PSR, contending that he was entitled to a "two or four point" reduction in his offense level for being a "very minor participant" under U.S.S.G. § 3B1.2. He also contended that his base offense level should have been 32 because he was involved in only six loads totaling approximately 6000 pounds.

At sentencing the district court denied Badillo's request for a minimal or minor role adjustment, and then calculated his base offense level at 34 due to his involvement in the Chicago warehouse transaction and in six *prior* transactions averaging 1000 pounds each. Consequently, his total offense level was 36, which coupled with criminal history category III, yielded a

possible sentencing range of 235 to 293 months. The court then sentenced Badillo to concurrent terms of 235 months' incarceration.

### B. Analysis

Badillo first challenges the district court's denial of his request for a minimal or minor role reduction. Under § 3B1.2, Badillo could have received a four-level downward adjustment if he played a minimal role in the conspiracy, *i.e.*, if he was plainly among the least culpable of those involved. U.S.S.G. § 3B1.2 comment.(n.1). He would have been entitled to a two-level reduction if his conduct was substantially less than that of the other participants, but not minimal. *See United States v. Crowley*, 285 F.3d 553, 559 (7th Cir.), *cert. denied*, — U.S. —, 123 S.Ct. 158, 154 L.Ed.2d 155 (2002). The two-level adjustment is appropriate for those defendants who play parts in committing the offense that make them "substantially less culpable than the average participant." U.S.S.G. § 3B1.2, comment. (n.3(A)). Badillo had the burden of proving his entitlement to a downward adjustment under § 3B1.2, *see United States v. Felix–Felix*, 275 F.3d 627, 636 (7th Cir.2001), and we review the district court's denial of his request for clear error, *see United States v. Arocho*, 305 F.3d 627, 641 (7th Cir.2002).

■ Badillo argues that the district court's finding that he was not a minimal or minor participant was clearly erroneous for two reasons. First, he asserts that the court failed to sufficiently articulate its basis for denying his request. *See United States v. Agee*, 83 F.3d 882, 889 (7th Cir. 1996) (sentencing court must fully explain its reasons for denying minor role reduction request). But contrary to his assertion, the court did provide a sufficient explanation for denying his request:

MR. SIKES [defense counsel]: We have the objection, Judge, as to the defendant's role in the offense. The Probation Officer takes the position, and apparently the Government does also and the prosecutor does also, that the defendant was not a minor role in the offense because he participated in several other loads.

In none of those loads was he a major participant, your Honor. I would submit that he was nothing more than a loader or an unloader operating at somebody else's direction. He apparently did not receive—there is no evidence that he received any substantial sum of monies from these activities. Certainly not to the extent that [co-defendant] Mr. Poteet did.

I would submit that even aggravating all of them together does not raise his position as a minor participant in the offense. I would suggest to your Honor that the defendant is, therefore, entitled to at least somewhere between a two- and a four-point reduction for a minor participant in the offense.

MS. MURPHY [the prosecutor]: Your Honor, the test under the Guidelines for minor participation is whether this defendant is less culpable than most of the other defendants in the case. Clearly he is less culpable than [co-defendants] Raul Perez and Clarence Poteet. That is a given.

But if you think of all of the other defendants in this case, your Honor, most of whom were simply unloaders, who were brought to G & G Warehouse to unload the marijuana, it can't be said that he is less culpable than most of the other individuals.

If you think of [co-defendants] Sergio Pelayo, Aaron Quintero Bravo, Lugardo Gutierrez, and individuals like that, who simply showed up at the site for a couple

of hundred dollars planning to unload—this is somebody who has a longstanding relationship with his co-defendant, Raul Perez, in a loader-unloader capacity and traveled all the way from Texas to Illinois in order to facilitate the distribution of the loads. This can't be said to be somebody who is less culpable than the majority of the defendants, who were recruited here in the Chicago area for a onetime unloading job.

THE COURT: I agree with Ms. Murphy's reading of the Guidelines. It would not actually be my choice, were I to be writing these Guidelines, but I have heard this argument before. One of the difficulties is, a person who reads the Guideline itself would take a look at the defendant here and say he was a minor participant, as we ordinarily use the English word "minor."

But the fact is that the Guideline tells you that they are not using it in the ordinary sense, they are using it in a sense of comparitively [sic] fault, with respect to the other participants. Obviously, his Guideline calculation was not raised because he was a major participant, or even a significant participant. I think, as the Guidelines read, he is not entitled to a minor participate [sic] adjustment.

(App. at 7–9.) The court thus considered Badillo's request and fully explained its reason for rejecting it.

■ Badillo next argues that the district court clearly erred by denying his request for a minimal or minor role reduction. But the only argument he makes is that the *court could have found* that his role as an occasional unloader in a top-heavy conspiracy made him substantially less culpable than the average participant. Perhaps the court could have made such a finding, but he makes no showing that the court *clearly erred* by finding otherwise.

Badillo admitted to unloading marijuana several times, unlike four of his nine co-defendants who were involved in one transaction. If anything, Badillo was *more* culpable than Torres, Daniel Pelayo, Aaron Quintero Bravo, and Lugardo Gutierrez. Consequently, Badillo failed to meet his burden of establishing that he played a minimal or minor role in the conspiracy.

■ Badillo's second challenge is also unpersuasive. He contends that the district court assigned too much marijuana as relevant conduct under the sentencing guidelines, and that as a result his prison sentences were too severe. In determining a drug offender's base offense level, sentencing courts consider quantities of drugs that are not specified in the count of conviction but were part of the same course of conduct or common scheme or plan as the offense of conviction. *See* U.S.S.G. § 1B1.3(a)(2); *United States v. Huerta*, 239 F.3d 865, 875 (7th Cir.2001). We review the district court's drug-quantity calculation for clear error. *Huerta*, 239 F.3d at 875. In calculating the quantity of drugs attributable to a defendant, sentencing courts may consider a wide range of information so long as it bears "sufficient indicia of reliability to support its probable accuracy." *United States v. Taylor*, 72 F.3d 533, 543 (7th Cir.1995). Drug-quantity determinations under the guidelines may be based on estimates; mathematical precision is not required. *United States v. Brumfield*, 301 F.3d 724, 734 (7th Cir.), *cert. denied*, —— U.S. ——, 123 S.Ct. 681, 154 L.Ed.2d 579 (2002).

At sentencing the district court held Badillo responsible not only for the 3248 pounds seized at the warehouse, but also for marijuana he unloaded in six prior transactions. The probation officer had recommended holding him accountable for 16,248 pounds (3248 pounds plus another 13,000 pounds from 13 previous transac-

tions). Badillo objected to this calculation on the ground that there was no evidence linking him to seven of the 13 transactions. Instead, he acknowledged involvement in six loads of marijuana that totaled around 6000 pounds. The only testimony at trial regarding Badillo's previous activity came from impeachment evidence from Badillo's proffer–two agents testified that Badillo had admitted to unloading marijuana six times. (App. at 45–49.) Co-defendant Clarence Poteet testified that he had been involved in 14 transactions totaling 13,000 to 14,000 pounds, but he did not shed light on Badillo's specific involvement in each of those loads. At the sentencing hearing, the parties disagreed whether the six loads to which Badillo had admitted included the Chicago transaction, or whether all six were prior transactions. Although the court agreed that the government had failed to establish by a preponderance of the evidence that Badillo was involved in 13 prior transactions, it nevertheless concluded that he had been involved in six *prior* loads via admissions in Badillo's proffer, placing the total of marijuana at well over 7000 pounds.

Badillo claims that the court clearly erred in its drug quantity calculation, but we do not agree. He admitted at sentencing that he had dealt in six loads that averaged 1000 pounds each, a total of 6000 pounds, (App. at 9–10); now on appeal he has acknowledged involvement in seven loads, conceding that there were six *prior* loads. (Appellant's Br. at 4–6, 15–18.) Consequently, Badillo's argument can prevail only if the court clearly erred by estimating that this seventh load weighed at least 600 pounds. But we do not believe the court clearly erred in light of the large size of the Chicago warehouse stash and the 1000–pounds–per–load estimate provided by Poteet. Thus, even though there is some question about the precise size of Badillo's prior loads, the court had good

reason to attribute to him more than 6600 pounds.

Accordingly, we GRANT counsel's motion to withdraw and DISMISS Torres's appeal. With regard to Badillo, we AFFIRM the sentences imposed by the district court.