NOT RECOMMENDED FOR PUBLICATION
File Name: 13a0994n.06

**No. 13-1068**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Nov 21, 2013
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| NOHA T. FOFANA, | ) | THE EASTERN DISTRICT OF |
| | ) | MICHIGAN |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

Before:  SILER, COLE, and COOK, Circuit Judges.

**SILER**, Circuit Judge.  A jury convicted Defendant Noha Fofana of a single count of conspiracy to commit food stamp fraud, in violation of 18 U.S.C. §§ 371 and 2024.  The district court sentenced him to 51 months of imprisonment plus three years of supervised release and restitution.  Fofana timely appealed his conviction, alleging the district court erred by limiting the purpose for which the jury could consider a defense witness's testimony about an alleged bribe offer. We **AFFIRM**.

**I.**

In 2009, the U.S. Department of Agriculture ("USDA") authorized Mandingo African Market ("Mandingo") – a convenience store in Flint, Michigan – to participate in its Supplemental Nutrition Assistance Program ("SNAP") (formerly called Food Stamps).  Fofana, the owner of Mandingo, had agreed as part of his participation in the program not to accept food stamps for cash

or other ineligible items. Current SNAP recipients utilize an electronic benefits transfer ("EBT") card that functions in the same manner as a debit card.

Fofana and several of his employees, including store manager Akhir McFarland, Sr. ("McFarland, Sr."), purchased EBT cards from SNAP customers – typically at a rate of 50 cents per dollar of benefits. At trial, the defense attempted to shift all culpability to McFarland, Sr. by arguing Fofana was an unwitting store owner with no knowledge of the fraud.

One of the clerks participating in the scheme was McFarland, Sr.'s son, Akhir McFarland, Jr. ("McFarland, Jr."). Along with other witnesses, McFarland, Jr. testified at length about the SNAP fraud at Mandingo, including details about Fofana's involvement. Defense counsel cross-examined McFarland, Jr. about a phone call he made to his cousin, Eric Yuell. Specifically, McFarland, Jr. was asked if he said during the call that his father had agreed to give him $10,000 if he supported his father's version of events while testifying. In response, McFarland, Jr. denied being offered anything by his father for his testimony.

As part of the defense case, Fofana called Devaroe Davis to testify about the alleged call between McFarland, Jr. and Yuell. Davis testified that he was present when Yuell answered a call from McFarland, Jr. and that because the phone was on speaker, he was able to hear the conversation. At that point, the government objected to the testimony Davis was about to give, arguing it was hearsay and should not be admitted into evidence. Fofana argued that the overheard statement should be admitted for two purposes: (1) to impeach McFarland, Jr.'s direct examination testimony, and (2) to demonstrate that McFarland, Jr. had been offered a bribe and thus had a corrupt motive for testifying. The district court found the testimony admissible, but only for the purpose

of attacking McFarland, Jr.'s truthfulness. It instructed the jury that Davis's testimony could not be used to establish that McFarland, Jr. had been offered a bribe. Fofana contends that the trial court's limitation on the purpose of Davis's testimony was an error that merits reversal of his conviction.

## II.

We review evidentiary rulings by the district court, including those involving hearsay, for an abuse of discretion. *United States v. Wright*, 343 F.3d 849, 865 (6th Cir. 2003) (citing *Trepel v. Roadway Express, Inc.*, 194 F.3d 708, 716 (6th Cir. 1999)).

## III.

### A.    Hearsay Analysis

To analyze whether the court below properly characterized Davis's testimony about the alleged bribe offer as hearsay, a review of the transcript is appropriate. Davis testified in pertinent part as follows:

> Q. (Defense Counsel, continuing): And who called who as between Eric Yuell and Akhir McFarland Junior?
>
> A. Akhir Junior called him on his cell phone.
>
> Q. Him being Eric?
>
> A. Yes.
>
> Q. And if it's on a cell phone, how were you able to hear it?
>
> A. 'Cause it was on speaker phone 'cause his phone isn't like his ear part broke so he got to answer his phone on speaker phone.
>
> Q. And were you able to hear that conversation?

> A. Yes.
>
> Q. And what did Akhir McFarland Junior say, if anything, during that conversation?
>
> A. Well, only thing he said was my daddy gone give me 10,000 if I do whatever he tell me to do and testify on Fofano [sic].
>
> Q. Is there any question but what you were able to hear that conversation?
>
> A. No, that was all that was said and then Eric told him he would call him back. He said you hot, I'm gone call you back and hung up the phone.

In this exchange, the relevant statement by the declarant, McFarland, Jr., is the assertion that McFarland, Sr. would give him $10,000 if he testified against Fofana. Fofana correctly points out that words used to offer a bribe amount to "verbal acts" with their own legal significance and do not qualify as hearsay. *See Preferred Properties, Inc. v. Indian River Estates, Inc.*, 276 F.3d 790, 798 n.5 (6th Cir. 2002); Fed. R. Evid. 801(c) advisory committee's note. In this instance, however, Davis did not hear McFarland, Sr. offer anyone a bribe. He heard McFarland, Jr.'s *assertion* that McFarland, Sr. had offered him a bribe. By arguing that the jury should have been allowed to consider McFarland, Jr.'s statement for the purpose of determining whether a bribe was actually offered, Fofana is seeking to use an out-of-court statement to prove the truth of the matter it asserts. *See United States v. Montana*, 199 F.3d 947, 950 (7th Cir. 1999) (explaining the difference between performative and illocutionary utterances when analyzing hearsay in the context of a bribe). Since Fofana does not cite a valid hearsay exemption supporting his position, the district court did not

abuse its discretion by limiting the use of Davis's testimony about the alleged bribe offer to the impeachment of McFarland, Jr.

**B.      Harmless Error Analysis**

Even if the district court erred by limiting the purpose for which the jury could use Davis's testimony, Fofana's conviction would nevertheless be affirmed because the error was harmless. An "[e]rror is harmless if [a court is] satisfied that the outcome of a trial was not affected by evidentiary error." *United States v. Vasilakos*, 508 F.3d 401, 406 (6th Cir. 2007) (internal quotation marks omitted).

Besides the McFarlands, two other eyewitnesses observed Fofana conducting illegal SNAP transactions, including the exchange of cash for SNAP benefits and allowing customers to use EBT cards to purchase ineligible items. Additionally, one of those witnesses observed Fofana manually entering EBT numbers into the point-of-sale machine when no customers were present in the store while the other saw Fofana meet McFarland, Sr. on multiple occasions carrying a bag containing cash, EBT cards and receipts. At those meetings, Fofana and McFarland, Sr. were observed dividing cash between themselves.

Along with the eyewitness testimony, the government produced significant circumstantial evidence of Fofana's guilt. An agent from the USDA testified that over 92% of the EBT transactions at Mandingo were manually typed in and that SNAP redemptions at the store were more than five times the average amount redeemed at similar convenience stores in the area. An FBI agent testified that more than $270,000 in cash was withdrawn during a six month period from the credit union account that Fofana controlled in which the Mandingo SNAP funds were deposited.

Additionally, a handwritten note in Fofana's wallet reading "June: 45,295.69 Mandingo" was found during a search of his residence. That figure nearly approximated the SNAP transaction total at Mandingo for the month of June 2011. Finally, a text message from July 2011 was recovered on Fofana's phone that was sent by a person offering to trade food stamps for cash.

Fofana conversely argues that his trial "was essentially a credibility contest between government witness McFarland, Jr. and defense witness Davis" and that if the jury had been permitted to substantively consider the bribe offer allegedly made by McFarland, Sr. the outcome would have been different. This argument fails for several reasons. First, since Davis's account of the bribe offer *was actually admitted* into evidence, the jury had that information – along with McFarland, Jr.'s denial – when it considered how much weight to give to the latter's testimony. Second, Davis's credibility itself was severely undercut during cross-examination. He admitted to having memory problems associated with a mental condition that required hospitalization in June and July 2011 and he failed to mention Fofana's lack of involvement in the SNAP fraud when first interviewed by federal agents.

## IV.

The district court properly recognized the distinction between a witness who hears a bribe offer directly and testifies about that "verbal act" and a witness who hears another person recount a bribe offer and seeks to testify about what that person said. The latter is hearsay and cannot be admitted to prove the truth of the matter asserted – in this case – that a bribe offer actually occurred.

**AFFIRMED.**