# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-1981

_____

United States of America,   *

      *

    Appellee,    *

      *   Appeal from the United States

   v.      *   District Court for the District

      *   of Minnesota.

Nancy Lynne Moyer,   *

      *

    Appellant.   *

_____

Submitted: October 20, 1998

Filed: July 23, 1999

_____

Before FAGG, BEAM, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Dr. Nancy Lynne Moyer stole morphine from the intravenous (IV) units of four patients who were under her care in the Intensive Care Unit of Methodist Hospital. On each occasion, Dr. Moyer inserted a hypodermic needle and syringe into the patient's morphine delivery device, removed some of the morphine, and replaced the stolen morphine with saline solution.

Based on this conduct, a jury convicted Dr. Moyer of four counts of tampering with a consumer product, see 18 U.S.C. § 1365(a)(4). The jury also convicted

Dr. Moyer of six counts of obtaining a controlled substance through fraud, *see* 21 U.S.C. § 843(a)(3), for her use of forged prescriptions to obtain various narcotics. *See United States v. Moyer*, 985 F. Supp. 924 (D. Minn. 1997). On appeal, Dr. Moyer challenges the application of the tampering statute to her conduct, the sufficiency of the evidence to sustain her convictions for tampering, and the trial court's application of the federal sentencing guidelines to her case. We affirm the judgment of the trial court.[1]

I.

The tampering statute, *see* 18 U.S.C. § 1365(a), imposes criminal sanctions on anyone who, "with reckless disregard for the risk that another person will be placed in danger of death or bodily injury and under circumstances manifesting extreme indifference to such risk, tampers with any consumer product that affects interstate ... commerce." Although Dr. Moyer admits that she stole morphine from her patients' IV units, she contends that her conduct did not fall within the scope of this statute. She relies on the legislative history of § 1365(a) to argue that Congress intended the term "tampers" to include a malicious-intent requirement, that is, the performance of a malicious act that renders a consumer product dangerous. Dr. Moyer thus argues that her convictions should be set aside because no evidence was adduced at trial that she acted with a specific intent to harm when she tampered with her patients' IV units.

We decline to read such a requirement into the statute, for we find no ambiguity whatsoever in its language. *See King v. Ahrens*, 16 F.3d 265, 271 (8th Cir. 1994) ("[when] 'the plain language of a statute is clear in its context, it is controlling' "), quoting *Blue Cross Association v. Harris*, 622 F.2d 972, 977 (8th Cir. 1980). The statute itself specifies the mental state required: A tamperer must act with "reckless disregard" and "extreme indifference" to the risks of death or bodily injury in which his or her act is placing another person.

---

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

We agree with the trial court, moreover, that in the context of this statute, the term "tampers" merely describes the physical act of product adulteration. A defendant's state of mind is not relevant to the ordinary meaning of the term, especially where, as here, other terms in the statute set forth the requisite state of mind in such a clear and unambiguous fashion. *See United States v. Jones*, 965 F.2d 1507, 1520 (8th Cir. 1992), *cert. denied*, 506 U.S. 924, 965 (1992), 508 U.S. 941 (1993) (where term is not defined by statute, it should be given its ordinary meaning). Under the plain language of § 1365(a), therefore, the government was required to prove only that Dr. Moyer tampered with her patients' IV units, and that she did so with reckless disregard and extreme indifference for the risk of death or bodily injury in which she placed her patients.

## II.

The statute specifically requires that the government prove an effect on interstate commerce as an element of the offense of tampering with a consumer product. *See* 18 U.S.C. § 1365(a). Dr. Moyer contends that the trial court should have granted her motion for a judgment of acquittal, *see* Fed. R. Crim. P. 29(c), on the tampering counts because the government failed to meet its burden of proof on this issue. We disagree.

A motion for a judgment of acquittal should be denied where the evidence, viewed in the light most favorable to the government, is such that a reasonable jury could have found each of the essential elements of the crime beyond a reasonable doubt. *See United States v. Hood*, 51 F.3d 128, 129 (8th Cir. 1995), and *United States v. Huntsman*, 959 F.2d 1429, 1436-37 (8th Cir. 1992), *cert. denied*, 506 U.S. 870 (1992). After carefully reviewing the record, we believe that there was sufficient evidence from which a reasonable jury could find that Dr. Moyer's tampering with her patients' IV units had an effect on interstate commerce.

The evidence at trial tended to show that Methodist Hospital purchases additional morphine from a Minnesota supplier when its supply drops below a certain

level, and that the morphine is manufactured outside Minnesota and shipped to the Minnesota supplier in response to orders. Witnesses testified that the morphine IV units of two patients began to leak after Dr. Moyer tampered with them, and that nurses had to replace those units with new units containing additional morphine for those patients. Methodist's pharmacist, moreover, testified that she ordered additional morphine to replace depleted supplies just a few days after Dr. Moyer had committed four of her six acts of tampering.

Based on this evidence, we think that a reasonable jury could find that Dr. Moyer's illicit use of her patients' morphine contributed to the depletion of the hospital's morphine supply, which in turn required the hospital to order additional morphine. Because that morphine necessarily traveled to Minnesota from out-of-state manufacturers, we believe that a reasonable jury could find that Dr. Moyer's tampering affected interstate commerce.

Dr. Moyer contends that her use of the morphine had no effect on interstate commerce because the same amount of morphine would have been used whether the patients or Dr. Moyer herself consumed it. In other words, Dr. Moyer appears to argue that the government must prove that her tampering resulted in an incremental drop in supply over and above the reduction that would have resulted from her patients' normal use of the morphine. We disagree.

While it may be true that the patients' use of the morphine would have resulted in the very same depletion of the hospital's supply, such speculation is irrelevant to our analysis here. The fact remains that Dr. Moyer stole the morphine from her patients before they could use it themselves, and the reduction in supply was thus a result of her actions and not theirs. The subsequent effect on interstate commerce, therefore, was, as a matter of fact, a result of Dr. Moyer's theft of the morphine from her patients' IV units. We thus conclude that there was sufficient evidence from which the jury could find that Dr. Moyer's tampering had an effect on interstate commerce.

-4-

### III.

Dr. Moyer also contends that the evidence at trial was insufficient to support the jury's finding that she acted "with reckless disregard," *see* 18 U.S.C. § 1365(a). On the contrary, we think that there is ample evidence in the record to support the jury's finding that Dr. Moyer acted with reckless disregard of the serious health risks to which her actions exposed her critically ill patients. Expert witnesses testified that Dr. Moyer's actions created risks for her patients of increased pain, agitation, infection, and air embolism. Dr. Moyer herself testified at trial that she was aware at the time of the tamperings that her actions might be creating health risks for her patients.

There is also ample evidence in the record to support the jury's finding that Dr. Moyer acted with "extreme indifference," *id.*, to the risks that her conduct created for her patients. For example, the evidence at trial established that Dr. Moyer stole morphine on two separate occasions from the IV unit of an elderly patient who was dying of lung disease and was receiving morphine for "comfort care," that is, to ease her pain and agitation through the dying process. Witnesses testified that shortly after Dr. Moyer's first theft of the patient's morphine supply, nurses found the patient "awake and yelling" and replaced the leaking IV unit. The patient's daughter testified that she spoke to Dr. Moyer later that day and implored her to "do something" about her mother's inadequate sedation; Dr. Moyer assured her that she would correct the matter and would ensure that the mother did not suffer. Less than a day after making those promises to the daughter, Dr. Moyer stole morphine from the mother's new morphine IV unit. We have no doubt whatsoever that such egregious behavior provides overwhelming support for the jury's finding that Dr. Moyer acted under circumstances manifesting extreme indifference to the risk of pain and suffering to which her actions exposed the mother. There is, moreover, similarly sufficient evidence in the record to sustain the jury's finding of extreme indifference regarding the risks to which her actions exposed the other three patients.

IV.

Dr. Moyer objects to various jury instructions that described the elements that the government was required to prove to establish Dr. Moyer's criminal liability for tampering with consumer products. Those instructions, however, closely track the language of the statute and the relevant case law. We therefore find no error in the trial court's instructions.

V.

At her sentencing, Dr. Moyer requested a downward departure from the applicable guidelines range for convictions under the tampering statute, *see* U.S.S.G. § 2N1.1(a). The trial court denied the request, ruling that Dr. Moyer's conduct fell within the heartland of the statute and that no downward departure was warranted. We agree. Application note 1 to § 2N1.1 provides, "In the unusual case in which the offense did not cause a risk of death or serious bodily injury, and neither caused nor was intended to cause bodily injury, a downward departure may be warranted." As the trial court correctly found, the evidence at trial established that Dr. Moyer's actions did expose her patients to risks of death or serious bodily injury, and this case is thus typical of the heartland of cases contemplated by the guidelines.

Finally, Dr. Moyer contends that the trial court erred when it departed upward from the applicable guidelines range and sentenced her to the statutory maximum of 48 months on each of her convictions for obtaining narcotics through the use of forged prescriptions. *See* 21 U.S.C. § 843(a)(3), § 843(d)(1). Because Dr. Moyer's sentences on the prescription fraud counts run concurrent to, and are shorter than, her 70-month sentence on each of the consumer product tampering counts, any error in the length of the sentence imposed is harmless and no remand is necessary. *See United States v. Nguyen*, 46 F.3d 781, 783 (8th Cir. 1995).

VI.

For the foregoing reasons, we affirm the judgment of the trial court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.