# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 04-2456

JON RILEY HAYS,

*Petitioner-Appellant,*

v.

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

_____

**Appeal from the United States District Court
for the Southern District of Illinois.
No. 03 C 310—David R. Herndon**, *Judge.*

_____

ARGUED DECEMBER 6, 2004—DECIDED FEBRUARY 10, 2005

_____

Before EASTERBROOK, KANNE, and EVANS, *Circuit Judges.*

KANNE, *Circuit Judge.* Jon Riley Hays, a licensed medical doctor, pled guilty to two charges stemming from his illegal use of OxyContin. Count I charged Hays with tampering with a consumer product, and Count II charged him with possession of a controlled substance by misrepresentation or fraud. Hays was sentenced to fifty-one months in prison for Count I and a concurrent sentence of forty-eight months for Count II. Hays now asks for collateral relief under 28 U.S.C. § 2255, claiming that his attorneys provided ineffective assistance and that his plea was not voluntary because he did not understand the nature of the charges against him. The district court denied his motion. For the reasons set forth in this opinion, we affirm.

## I. History

Hays practiced medicine in several towns in rural Illinois. In early 2000, he was involved in a car accident which caused injury to his back. He began taking OxyContin to relieve his pain and became addicted to the drug. Although the recommended oral dosage was 20 to 40 mg per day, Hays would often inject approximately 300 mg of the drug in a day.

In order to gain access to such a large amount of OxyContin, Hays prescribed it to his patients and then stole the drug from them during house calls. How he did this is in some dispute. The state argues that he crushed the OxyContin tablets, dissolved the particles in a syringe, and injected the patient with a portion of the dissolved drug. He then left with a syringe filled with the drug and some of the remaining tablets for his own use. Hays denies that he injected patients with the dissolved OxyContin, stating that he thought "crushing something . . . would be dangerous." He claims that he occasionally broke pills in half or prescribed more of the drug than the patient needed so that he could take some of the pills for himself. He also injected some patients with a placebo (i.e., lidocaine or saline) so that he could inject the entire dosage of OxyContin into himself.

Under Count I of the indictment, Hays was charged with tampering with a consumer product:

> Whoever, with reckless disregard for the risk that another person will be placed in danger of death or bodily injury and under circumstances manifesting extreme indifference to such risk, tampers with any consumer product that affects interstate or foreign commerce . . . [shall] be fined under this title or imprisoned not more than ten years, or both.

18 U.S.C. § 1365(a), (a)(4). Count II alleged that Hays had "acquire[d] or obtain[ed] possession of a controlled sub-

stance by misrepresentation, fraud, forgery, deception, or subterfuge." 21 U.S.C. § 843(a)(3). Hays pled guilty to these charges but now seeks relief from his fifty-one month sentence under 28 U.S.C. § 2255.

## II.  Analysis

Relief under § 2255 "is reserved for extraordinary situations." *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 633-34 (1993)). The court may vacate or correct Hays's sentence if he can "show that the district court sentenced him in violation of the Constitution or laws of the United States or that the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack." *Prewitt*, 83 F.3d at 816 (citing *Theodorou v. United States*, 887 F.2d 1336, 1338 n.2 (7th Cir. 1989)). We review the district court's denial of the § 2255 motion *de novo. McCleese v. United States*, 75 F.3d 1174, 1177 (7th Cir. 1996).

In order for a plea to be valid, it must be made voluntarily, knowingly, and intelligently. *See United States v. Gilliam*, 255 F.3d 428, 432-33 (7th Cir. 2001) (citing *McCarthy v. United States*, 394 U.S. 459, 466 (1969)). Hays now argues that his plea was not intelligent or voluntary and that his attorney provided ineffective assistance.

### A.  Hays's Conduct Affected Interstate Commerce

A guilty plea is not made intelligently unless the defendant receives "real notice of the true nature of the charge against him . . . ." *Smith v. O'Grady*, 312 U.S. 329, 334 (1941). Hays argues that because "neither [Hays], nor his counsel, nor the court correctly understood the essential elements of the crime with which he was charged," the guilty plea is not valid. *See Bousley v. United States*, 523 U.S. 614, 618-19 (1998). The misunderstanding that

Hays alleges relates to the interstate commerce element of 18 U.S.C. § 1365(a).

Hays relies on a Tenth Circuit decision as support for his argument that neither his counsel nor the court truly understood what was necessary for proving the interstate commerce element of § 1365(a). In *United States v. Levine*, the court held that "the effect on interstate commerce must occur at or after the tainting." 41 F.3d 607, 614 (10th Cir. 1994). The court noted that "the interstate commerce requirement is phrased in the present tense." *Id.* Therefore, it should be read to penalize one who tampers with a product that "*affects* interstate commerce." This "suggests that the consumer product must have either a present effect or an effect in the future, and appears to exclude pre-tainting events." *Id.*

At the change of plea hearing, the court established that OxyContin is manufactured in Minnesota and that the tampering occurred in Illinois. This was taken as adequate evidence of an effect on interstate commerce. Hays believes that the question should have been whether the drug had any effect on interstate commerce after Hays gained access to the OxyContin at the homes of his patients. He argues that his lawyers should have been aware of *Levine* and should have advised him not to plead guilty.

Even if it is on point, a Tenth Circuit decision is not binding on courts in other circuits. *See United States v. Glaser*, 14 F.3d 1213, 1216 (7th Cir. 1994). We decline to follow *Levine*. We find the Eighth Circuit's decision in *United States v. Moyer* to be persuasive. 182 F.3d 1018 (8th Cir. 1999). In that case, the court reasoned that when a nurse stole morphine, she depleted the supply of morphine and caused more to be ordered. The morphine that was ordered traveled in interstate commerce. Under this reasoning, when a drug is manufactured outside the state,

the law of supply and demand can support a violation of § 1365(a). *See Moyer*, 182 F.3d at 1021.

Also instructive was our decision in *United States v. Cunningham*, 103 F.3d 553 (7th Cir. 1996). In that case, a nurse stole Demerol from a locked cabinet and replaced the drug with saline. This tampering arguably occurred after the drug had traveled in interstate commerce. The court did not discuss the interstate commerce element in upholding Cunningham's conviction under § 1365, but the case can be read to state implicitly that the timing of the tampering is irrelevant.

Hays does not deny that he tampered with OxyContin. By breaking pills, injecting saline, and stealing up to half of the drugs he prescribed, he denied patients who were dying of cancer their pain medication. Because of the prescriptions he wrote to facilitate his use of the drug, pharmacies in Illinois were required to order more OxyContin from Minnesota to replenish their supplies. Under the supply and demand theory, this is enough to support a violation of § 1365(a).

The Supreme Court has indicated that the phrase "affecting commerce" usually "signals Congress' intent to exercise its Commerce Clause powers to the full." *Allied-Bruce Terminix Co. v. Dobson*, 513 U.S. 265, 273 (1995). We find that a violation of § 1365(a) occurs whether the tampering takes place before, during, or after the product moves in interstate commerce. Therefore, Hays did have real notice of the charges against him and his guilty plea was made intelligently.

## B.  Ineffective Assistance

Hays claims that his counsel failed to adequately advise him of the elements of the tampering charge and that he was provided with false information about his likely sentence. "To demonstrate prejudice arising from a guilty plea allegedly rendered involuntary by counsel's deficient performance, a petitioner must establish that counsel's performance was objectively unreasonable and that, but for counsel's erroneous advice, he would not have pleaded guilty." *Bridgeman v. United States*, 229 F.3d 589, 592 (7th Cir. 2000) (citation omitted). This test is "highly deferential" to counsel and presumes reasonable judgment and effective trial strategy. *See United States v. Scanga*, 225 F.3d 780, 783-84 (7th Cir. 2000).

Hays argues that he is actually innocent of the tampering charge and that he would not have pled guilty to it if he had understood the elements. However, because we decline to accept the rationale of *Levine*, we find that Hays's counsel was objectively reasonable in allowing Hays to plead guilty.

Hays claims his attorney misrepresented what his sentence would be if he did not plead guilty. Specifically, Hays states that his counsel told him that he should plead guilty because the prosecutors were personally angry with him and that they win ninety-nine percent of their cases. He says that counsel informed him that if he did not plead guilty to Count I, the prosecutors would "de-stack" the charges against him and he might have to spend ten to twenty years in prison. Hays says he was told that if he did accept the plea agreement, he would probably receive a very short sentence or possibly just probation because the prosecutors would not oppose a one-third reduction of the sentence and he would be eligible for a drug program which would further reduce his sentence.

Hays now claims that the advice given to him by counsel was unsound. He argues that ten to twenty years was

not a good faith estimate of his potential sentence and that it was also unlikely that Hays would receive "little to no" prison time if he pled guilty. Counsel should have discovered that Hays was not actually eligible for the drug program because the tampering charge was classified as a violent crime by the Bureau of Prisons. Although this confusion was unfortunate, it is not enough to prove ineffective assistance—especially when Hays's conversation with the district court is taken into consideration.

The court discussed the plea and its consequences with Hays and told him, "[Y]ou're looking at prison time in this case, not probation; and you understand that?" He responded affirmatively. Judge Herndon explained at length that the final sentencing decision would be made by the court, not by the prosecutor or the defense attorneys. He informed Hays that if he decided to impose a sentence at the high end of the guideline range—closer to sixty-three than fifty-one months—Hays would not be able to withdraw his guilty plea.

Counsel's advice to Hays was not objectively unreasonable. Had Hays gone to trial, his sentence could have been substantially higher. Because of his plea, the court granted a three-level downward departure for acceptance of responsibility under U.S.S.G. § 3E1.1(a), (b). Without this departure, Hays's sentence would have been between seventy and eighty-seven months.[1] Although it is true that counsel and the court thought that Hays would be eligible for a drug program, Judge Herndon made it clear at the hearing that neither he nor the attorneys had any control over that decision. Hays has not provided sufficient evidence to overcome the presumption that his counsel was effective.

---

[1] We note in passing that *United States v. Booker*, 125 S. Ct. 738 (2005), is not implicated in this case. *See McReynolds v. United States*, No. 04-2520, 2005 WL 237642 (7th Cir. Feb. 2, 2005).

*C.  Hays's Plea Was Voluntary*

Hays contends that his plea was not voluntary because the government threatened to add charges against him if he did not plead guilty. The court discussed this pressure with Hays and came to the conclusion that, although it was a difficult decision, Hays had weighed the benefits and decided voluntarily that pleading guilty was his best option.

The court asked Hays whether anyone attempted to put undue pressure on him to plead guilty. The following conversation then occurred:

Hays:   I certainly feel that the Government may attack me more vociferously on charges that probably have not much merit, but certainly I think that that is an action that they've not said so much that they would take, but that is certainly looming out there. It is a threat. I feel that this is something I had to accept, yes.

. . . .

Court:   Okay. So, I guess the bottom line is nobody comes in here gladly to plead guilty. . . . So, people come to some realization at some point that given the circumstances, they, to use your word, they feel like they have to do this because of a number of things. Obviously, there is some advantage to pleading guilty in the sense of acceptance of responsibility saves a person some punishment. Perhaps there is some other reasons [sic] for accepting a plea; might be to avoid additional charges, or whatever the fact of life is.

The real question I have to try to determine here is are you doing this of your own free will? Is this something you want to do, given the fact

that you feel the constraints of the reality of the situation, but something that you really and truly want to do given everything, absent some undue arm twisting or improper sort of pressure?

Hays: Yes, sir. In that instance, yes, understanding all the charges, understanding the position of the Government, the limitations available on this plea, the possible augmentation of charges or sentencing or departure downward. Taking all those things into consideration, no, sir, nobody has quote-unquote twisted my arm to make this plea. This is done of my own free will.

(App. at 22-24.)

A plea agreement is constitutionally valid if it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *United States v. Kelly*, 337 F.3d 897, 904 (7th Cir. 2003) (citing *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). A trial judge has discretion to accept a guilty plea even when the defendant has declared his innocence as long as there is adequate evidence of guilt. *See Higgason v. Clark*, 984 F.2d 203, 208 (7th Cir.), *cert. denied*, 508 U.S. 977 (1993). We find that Hays's colloquy with the court, and the evidence of guilt in the record, establishes that his plea agreement was voluntary and intelligent.

## III. Conclusion

Hays pled guilty to tampering with and fraudulently possessing OxyContin. He now argues that his counsel was ineffective and that his guilty plea was involuntary. These claims have no merit. He had a difficult decision to make, and he must now live with the consequences of that decision. The denial of his § 2255 motion is AFFIRMED.

A true Copy:

    Teste:

                        _____

                        *Clerk of the United States Court of*
                              *Appeals for the Seventh Circuit*