# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 04-1485

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

VIRGIL D. CARROLL,

*Defendant-Appellant.*

———————

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 03-CR-085-S-01—**John C. Shabaz**, *Judge.*

———————

ARGUED APRIL 20, 2005—DECIDED JUNE 21, 2005

———————

Before COFFEY, MANION, and WOOD, *Circuit Judges.*

PER CURIAM. Virgil Carroll, a resident of Missouri, was arrested on June 20, 2003, at Fort McCoy, Wisconsin, where he was undergoing annual Army Reserves training. A search of his quarters revealed 35 grams of methamphetamine, related paraphernalia, more than 100 pills containing the methamphetamine precursor pseudoephedrine, and a .22 caliber derringer. The government alleged that Carroll had distributed methamphetamine on several occasions to other parties, including two minors. Carroll was charged in a superseding indictment with five counts of possession with intent to distribute and distribution of

methamphetamine, and possession of a firearm in further-ance of a drug trafficking crime.

After rejecting the government's first offer, Carroll even-tually entered into a plea agreement. Although the agreement originally provided that he would plead to Counts One and Five of the superseding indictment, which charged him with distributing methamphetamine in December 2002 and possessing the derringer in connection with a drug offense, the parties altered the agreement at the last minute. Instead of pleading guilty to the December 2002 distribu-tion charge, Carroll pleaded guilty to Count Four, which charged that he possessed with intent to distribute the methamphetamine found in his quarters in June 2003. Carroll also pleaded guilty to Count Five, the gun charge, as originally provided for in the plea agreement. During the plea colloquy, Carroll confirmed under oath that he was satisfied with the performance of his attorney, Brown, with whom he had discussed the plea agreement. He further acknowledged that he had signed the agreement and was pleading voluntarily. Carroll admitted intentionally pos-sessing for distribution the methamphetamine found in his quarters on June 20, 2003, and possessing the .22 caliber derringer on that same date in furtherance of that drug trafficking crime. He acknowledged that the search of his quarters uncovered a variety of items indicative of metham-phetamine distribution, such as a scale and towels covered with methamphetamine residue. He admitted that the items were his and that he possessed them in furtherance of his distribution activities. The court accepted Carroll's guilty pleas.

On December 15, 2003, several weeks after Carroll pleaded guilty, the probation officer released the presentence in-vestigation report. The probation officer calculated a guideline range of 46 to 57 months on Count Four, and five years, or the statutory minimum, for Count Five, the two sentences to be served consecutively. (The probation officer

later offered an amended calculation of 33 to 41 months on Count Four, to be used if the court declined to include drug quantities from incidents not encompassed by Carroll's guilty pleas; the court adopted the lower calculation at sentencing.) The presentence report cited the fact that Carroll distributed methamphetamine to minors as an aggravating circumstance that could warrant an upward departure under U.S.S.G. § 5K2.0. Brown filed, on Carroll's behalf, objections to the report on December 29, 2003, and a motion to withdraw his guilty pleas on January 5, 2004.

In an affidavit supporting the motion to withdraw, attorney Brown related that Carroll now insisted that he was innocent of the crimes to which he pleaded guilty, and that he pleaded only because Brown pressed him to do so on a short deadline. According to Carroll's chronology, as related by Brown, the lawyer received unspecified "information and additional discovery" on November 4, 2003, two days before a deadline set by the government for Carroll to accept a proposed plea agreement. Carroll discussed this new information with Brown over the telephone, since he was at home in Missouri at the time and did not arrive in Wisconsin until the day of the plea hearing. Brown summarized Carroll's asserted grounds for withdrawing his pleas as (1) Carroll never had enough time to review the new discovery before the government's deadline; and (2) Brown rendered ineffective assistance of counsel by overstating the amount of time Carroll would face if he went to trial and by "strong-arming" him to accept the agreement.

On February 12, 2004, Carroll supplemented his motion to withdraw through new counsel. Carroll reiterated his claim of actual innocence, specifying that the basis of this defense was that he had not been in Wisconsin at all during December 2002, when the actions giving rise to Counts One and Two of the superseding indictment allegedly occurred. This, according to Carroll, not only made it impossible that he was guilty on those counts, but also Counts Three, Four,

and Five, although he admitted that he was in Wisconsin on the dates when those offenses allegedly occurred. Carroll also elaborated on his claim of ineffective assistance of counsel, alleging that he was able to contact Brown only indirectly, through his assistant, from the time of the superseding indictment in mid-September 2003 until early November, when Brown called him in Missouri to say that he "had received new discovery which was 'bad.'" Again, Carroll did not elaborate on the nature of this discovery, or its perceived impact. Brown, according to Carroll, advised that he accept the plea agreement because a guilty verdict at trial could result in a sentence as high as 85 years' imprisonment. Carroll indicated that Brown held out the plea agreement as an alternative that would result in "a sentence of six years, of which he would actually serve as little as four years." Carroll then protested his innocence to Brown, as he maintains that he had done all along, to which Brown replied that he had not subpoenaed any witnesses or prepared any defense, and that if Carroll went to trial, "he would be surely convicted and face 85 years in prison." Carroll said that, having not seen the discovery, he then agreed to plead guilty to Counts One and Five, so Brown faxed him the plea agreement, which he signed.

Carroll's supplement also details his version of the events of the plea colloquy. According to Carroll, just before the plea hearing he met with Brown and an FBI agent who was there to return personal property seized from his barracks quarters during the June 2003 search. Carroll alleged that while he was distracted by the return of his personal property, attorney Brown had him sign a piece of paper without reading it. The document changed Carroll's plea agreement to Counts Four and Five (the June 2003 methamphetamine possession stemming from the search of his quarters and the firearm charge) rather than Counts One and Five (the distribution charge from December 2002 when, Carroll alleges, he was not in Wisconsin). When he heard the charges

read in court he asked Brown about the change; Brown "simply said not to worry and to just get through the plea without doing anything to upset the judge." Carroll explained that he repeatedly expressed to Brown "his unease and distress at pleading guilty to something he did not do," but Brown replied that he should "simply do the plea, and any problems could be resolved later on appeal in the court of appeals." Shortly thereafter, Carroll continued, he received the presentence report, at which point he "realized for the first time the actual sentence he was likely to receive, and the nature and importance of the way sentencing guidelines calculations worked in determining that sentence." Carroll then moved to withdraw his pleas.

The district court conducted a hearing on the motion just prior to sentencing, where Carroll testified that he had lied at the plea colloquy. Carroll elaborated that he falsely admitted guilt because attorney Brown had told him that "if I didn't do it they wouldn't accept the plea and if they didn't accept the plea I would be found guilty and have to do eighty-five years." Brown also testified and denied the allegation, especially the figure of 85 years. After Carroll, Brown, members of Carroll's family, and one of the minors to whom Carroll allegedly distributed methamphetamines testified and were cross-examined, the district court rejected the motion. The judge explained that Carroll, during his plea hearing, had been "one of the more credible witnesses" that he had seen, and that his demeanor was "direct, nonequivocating, [and] not coached." The court found that Carroll's explanation of the events culminating in his guilty pleas was unsatisfactory and not credible, citing in particular the dispute over whether his attorney raised the specter of an 85-year sentence, which the court found dubious. Finding that the Brown's performance was reasonable, the court sentenced Carroll in accordance with his pleas on Counts Four and Five of the superseding indictment, possession with intent to distribute the methamphetamine

found in the search of his quarters and possession of the derringer in furtherance of that drug trafficking crime.

The court calculated that, in connection with Count Four, Carroll was in possession of the equivalent of 43.22 kilograms of marijuana after converting the methamphetamine discovered during the search. *See* U.S.S.G. § 2D1.1, comment. (n.10). Accordingly, the court assigned Carroll a base offense level of 20. Carroll, as his new attorney conceded, had disqualified himself from an acceptance-of-responsibility credit by attempting to withdraw his guilty pleas and standing on his innocence. Moreover, the court characterized Carroll's testimony in support of his motion to withdraw as perjurious, and found that his testimony together with his attempt to withdraw the pleas constituted obstruction of justice. The court added 2 levels under U.S.S.G. § 3C1.1, resulting in a total offense level of 22. From the resulting range of 41 to 51 months, the court sentenced Carroll to 51 months on Count Four. The judge explained that, while he might have departed upwards based on Carroll's conduct in distributing methamphetamine to minors, he decided instead to sentence at the top of the range. The court also sentenced Carroll to a consecutive five-year term on Count Five.

On appeal Carroll challenges the denial of his motion to withdraw his guilty pleas. He also argues that the district court committed clear error in applying the upward adjustment for obstruction, and plain error by applying the sentencing guidelines as mandatory.

A defendant does not have an absolute right to withdraw a plea before sentencing, although the court may allow him to do so if he has a "fair and just reason" for doing so; the court's "factual findings about the existence (or not) of a fair and just reason to withdraw the plea stand unless they are clearly erroneous." *United States v. Wallace*, 276 F.3d 360, 366 (7th Cir. 2002). We review the district court's ruling for

abuse of discretion. *Id.* Carroll makes two arguments on his guilty pleas—that he is actually innocent, and that ineffective assistance of counsel rendered the pleas involuntary. We perceive no abuse of discretion in the district court's refusal to accept either contention as a basis to set aside Carroll's guilty pleas.

As to the first, actual innocence is a valid ground for withdrawing a guilty plea. *United States v. Hodges*, 259 F.3d 655, 661 (7th Cir. 2001). "But a defendant's bare protestations of innocence—especially after a knowing and voluntary guilty plea in a thorough Rule 11 colloquy—will not suffice. . . . The defendant must proffer some credible evidence." *Id.* Carroll provided no evidence other than his own denials with respect to Counts Four and Five of the superseding indictment, which not only contradicted his earlier sworn testimony during the plea colloquy, but also ignores that as to those two counts the government would have offered at trial the methamphetamine, the gun, and the associated items suggesting drug distribution that were found in Carroll's quarters. And of course the government would have presented testimony from reservists who saw Carroll with juveniles while he was at Fort McCoy, and from the juveniles themselves. The district court was thus understandably skeptical of the claim of innocence, especially since it came only after Carroll saw the presentencing report. *See United States v. Underwood*, 174 F.3d 850, 854 (7th Cir. 1999). It is also not lost upon us that Carroll's rhetoric about actual innocence focuses solely on the dates he allegedly committed counts that were dismissed as part of his plea agreement.

Ineffective assistance of counsel renders a guilty plea involuntary, *Hill v. Lockhart*, 474 U.S. 52, 57 (1985), and thus is also a valid basis for withdrawing a guilty plea. *United States v. Wallace*, 276 F.3d at 360. But to have shown ineffective assistance, Carroll was required to demonstrate both that Brown's performance was "objec-

tively unreasonable" and that, but for Brown's errors, Carroll would not have pleaded guilty. *Hays v. United States*, 397 F.3d 564, 568 (7th Cir. 2005). "This test is 'highly deferential' to counsel and presumes reasonable judgment and effective trial strategy." *Id.* (citation omitted). Any contention that Brown's performance was objectively unreasonable stands in sharp contrast to Carroll's testimony during his plea colloquy, at which time he affirmed under oath that he was "satisfied with the counsel, representation and advice given" by Brown.

Brown described the trial strategy he would have pursued, which focused on discrediting the government's witnesses, but added that:

> [W]hat I indicated was that there comes a point in my opinion where a jury, it isn't going to matter if the government's witness A isn't credible, if the government's witness B isn't credible, at some point you're going to have a cumulative effect and whether individually they're credible or not that in my opinion a jury was going to find their cumulative evidence to be credible and that I thought that it looked very bad for him to go to trial and I told him in all likelihood it was my opinion that he was likely to be convicted.

The district court found that, given the circumstances, Brown's advice to pursue a plea agreement was reasonable, and that Carroll's guilty pleas were not involuntary due to bad advice or information from his counsel. These findings are not clearly erroneous.

Carroll further argues that the sentencing court failed to make adequate findings to support the upward adjustment under U.S.S.G. § 3C1.1. In order to find obstruction based on perjury, the sentencing court must find that the defendant willfully made misrepresentations under oath that were relevant to the prosecution, and specifically intended to obstruct justice. *United States v. Dunnigan*, 507 U.S. 87,

94 (1993); *United States v. Jackson*, 300 F.3d 740, 749 (7th Cir. 2002). We review the adequacy of the sentencing court's conclusions under *Dunnigan de novo*, and its factual findings for clear error. *United States v. McGiffen*, 267 F.3d 581, 591 (7th Cir. 2001).

The district court made several particular findings that Carroll was lying. It found his testimony that Brown told him he would be sentenced to 85 years' imprisonment not credible: "Particularly, [Brown] did not say 85 years. And when you begin to go more than just the usual lack of credibility and go so far beyond, it smacks of intentional lying and deceit under oath. This is not the type of lawyer that is going to tell him 85 years, nor has he agreed that he did tell him that." The court also found that Carroll falsely testified that the various pseudoephedrine pills found in his quarters were prescribed to him in order to treat a medical condition; the prescription that Carroll proffered for the pills dated from after his arrest. But overall the court based its findings of perjury on Carroll's previous admissions, including his sworn statements during the plea colloquy and an admission that he kept the weapon to protect himself because he carried large amounts of cash. The court's determination that Carroll perjured himself in support of the motion to withdraw is not a clear error, and the district court did not misapply the guidelines in its application of § 3C1.1.

Carroll finally argues that his Fifth and Sixth Amendment rights were violated when the district court increased his sentence based on judicial findings of fact. The district court made two relevant findings without a jury, the weight of the methamphetamine Carroll possessed and that he testified falsely at the hearing on his motion to withdraw his pleas. Accordingly, there was a constitutional error in this case. But Carroll did not raise an objection below sufficient to escape the plain error standard of review; his only challenge to his sentencing adjustments was predicated on the claim

that the court misapplied § 3C1.1. As Carroll did not object on constitutional grounds in the district court, the standard of review is plain error. *United States v. Paladino*, 401 F.3d 471, 486-87 (7th Cir. 2005).

Although the district court selected the high end of the guideline range to account for Carroll's distribution of methamphetamine to minors, we have said that even a term of imprisonment at the top of the range "does not rule out the possibility that the judge might have imposed a lesser sentence had he known that the Guidelines did not bind him." *United States v. Della Rose*, 403 F.3d 891, 907 (7th Cir. 2005); *see also Paladino*, 401 F.3d at 482. A limited remand is in order to discover whether the sentencing court would have given Carroll a different sentence on Count Four had it understood the guidelines to be merely advisory. *Paladino*, 401 F.3d at 483. Accordingly, we affirm Carroll's convictions but order a limited remand under *Paladino* in order to obtain a determination as to whether the district court would have applied a different sentence post-*Booker*.

A true Copy:

Teste:

_____
***Clerk of the United States Court of
Appeals for the Seventh Circuit***