**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 1, 2005
Decided December 14, 2005

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 05-1422

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee*,

    *v.*

THOMAS C. KISTING,
    *Defendant-Appellant*.

Appeal from the United States District
Court for the Northern District of
Illinois, Western Division

No. 04 CR 50006

Philip G. Reinhard
*Judge.*

**O R D E R**

Thomas Kisting, the business manager of an ironworkers local and the plan administrator for the union's pension plans, was convicted after a jury trial of receiving a Harley-Davidson motorcycle because of his duties as plan administrator, in violation of 18 U.S.C. § 1954. Kisting argues on appeal that the district court (Judge Philip G. Reinhard) erred in giving the jury an "ostrich" instruction. He also argues that Judge Reinhard misapplied the sentencing guidelines when he imposed a two-level upward adjustment for "obstruction of justice" after finding that he lied at trial. The facts are interesting, and even a bit entertaining, so we recount them in some detail.

When Kisting was elected business manager of his union in 1990, he assumed the role of plan administrator for the union's two pension plans. During Kisting's tenure, Joseph/Anthony and Associates, Inc. ("Joseph/Anthony"), held the contract as third-party administrator for both plans. According to Kisting's account at trial, Michael Linder, the president of Joseph/Anthony, approached him in the fall of 1998 and sold him a $20 raffle ticket. Kisting introduced into evidence a copy of the purported ticket, which on its face specifies that the drawing for the top prize, a Harley-Davidson Standard Softail motorcycle from a dealership in Mount Vernon, Illinois, was to take place at a bar in Joliet, Illinois. Kisting said he did not attend the drawing, but that Linder told him a few months later, that surprise, surprise, he won!

Kisting's testimony was in response to evidence showing that on December 23, 1998, he and Fred Schreier, the president of a second union employing Joseph/Anthony, accompanied Linder to a Harley-Davidson dealership in Manteno, Illinois, where Linder used a company check to buy Harleys for both Kisting and Shreier. At trial Kisting denied making the trip with Linder and Shreier, but what seems to us to be rather powerful evidence, a dealership employee testified that she photocopied Kisting's driver's license on that date and remembered the three men because they were not regular customers. Kisting, moreover, did admit going to the Manteno dealership on January 15 to pick up the bike, though he could not explain why he got it there, rather than at the Mount Vernon dealership named in the raffle ticket Linder supposedly sold him. Add more intrigue to the affair, the bike Kisting received was not the basic Standard Softail advertised on the raffle ticket. It was a fully loaded Heritage Softail, which sells for around $20,000. A manager at the Manteno dealership testified that this Heritage was not ordered in advance (as would be the case with a raffle prize), but instead was a display bike purchased directly off the floor. The former owner of the Mount Vernon dealership added that the Joliet bar named in Kisting's raffle ticket really did buy a Harley from him in 1998 for a raffle, but that it was a Standard Softail just like the ticket advertised, which was ordered and partially paid for prior to the raffle.

The government's evidence also established that nine months after Kisting got his bike the trustees of the pension plans awarded Joseph/Anthony a $31,500 contract to serve as investment advisor, even though Joseph/Anthony did not have a securities license. This contract was in addition to the contract Joseph/Anthony already held as third-party administrator for the two plans. The trustees made the ultimate contracting decision, but as plan administrator Kisting often advised and counseled them. Kisting never disclosed Linder's connection to his new Harley when this contract was awarded, nor did he tell the trustees, the union's attorneys, or a federal investigator about the bike or Linder's involvement in its acquisition when allegations of fraud prompted the union to sue Joseph/Anthony and the

Department of Labor to open an investigation in 2002. Kisting also failed to disclose the bike to his accountant and did not pay taxes on its value.

At trial Kisting maintained that he genuinely believed he won the motorcycle in the raffle. Shreier was charged separately, and neither he nor Linder testified at Kisting's trial. To counter the government's evidence that the motorcycle he received was not the raffle bike, Kisting pointed out that the word "raffle" is handwritten on a document prepared by the Manteno dealership in connection with the sale of the two bikes to Linder in December 1998. The manager testified, however, that the sale of a raffle bike typically generates more paperwork than what was prepared for Kisting's motorcycle. Kisting also emphasized that it was the trustees' decision, not his own, to hire or retain Joseph/Anthony. Finally, he explained that he sold the motorcycle to cover his wife's gambling debts, and that he did not pay taxes on the bike because he was unaware that winning a prize is a taxable event.

Judge Reinhard instructed the jury that to convict Kisting under § 1954 it must find beyond a reasonable doubt that he "knowingly received or agreed to receive a gift or thing of value." Over Kisting's objection the court defined "knowingly" using this circuit's pattern instruction:

> When the word "knowingly" is used in these instructions, it means that the defendant realized what he was doing and was aware of the nature of his conduct and did not act through ignorance, mistake, or accident. Knowledge may be proved by the defendant's conduct and by all the facts and circumstances surrounding the case.
>
> You may infer knowledge from a combination of suspicion and indifference to the truth. If you find that a person had a strong suspicion that things were not what they seemed or that someone had withheld some important facts, yet shut his eyes for fear of what he would learn, you may conclude that he acted knowingly as I have used that word. You may not conclude that the defendant had knowledge if he was merely negligent in not discovering the truth.

The jury found Kisting guilty, and because he was sentenced after *United States v. Booker*, 375 F.3d 508 (7th Cir. 2004), *aff'd*, 543 U.S. 220 (2005), the judge applied the sentencing guidelines as advisory. In calculating the applicable guideline range, he imposed a two-level upward adjustment under U.S.S.G. § 3C.1 for obstruction of justice because he found that Kisting lied about his acquisition of the Harley. Kisting was sentenced to 12 months and one day in prison (a term within the guideline range) to be followed by one year of supervised release.

We begin with the ostrich instruction.  Section 1954(1) makes it a felony for a pension-plan administrator to receive a gift or other thing of value "because of or with intent to be influenced with respect to, any of the actions, decisions, or other duties relating to any question or matter concerning such plan."  18 U.S.C. § 1954(1).  Although without Linder's testimony the government lacked direct evidence that Kisting received the motorcycle because of his position as administrator of the two pension funds, the prosecution theorized that Linder's purpose was evident circumstantially from differences between the information represented in the purported raffle ticket and the actual means by which he obtained the motorcycle.  Kisting maintained that he had no idea the raffle was a sham, and on appeal he renews his argument that the ostrich instruction was improper because the government did not present sufficient evidence that he deliberately avoided learning the truth about whether he actually won the raffle.  The ostrich instruction confused the issue, Kisting argues, because on the evidence before it the jury faced "a clear binary choice between actual knowledge and complete innocence."  As Kisting sums up the situation, the jury either believed he was present with Linder and Shreier when the two motorcycles were purchased, and thus would necessarily have concluded he knew the raffle was a sham, or else the jury believed his testimony that he did not go to the dealership that day, and would have, therefore, exonerated him.

We review the decision to give an ostrich instruction for an abuse of discretion, viewing the evidence in a light most favorable to the government. *United States v. Graffia*, 120 F.3d 706, 713 (7th Cir. 1997).  An ostrich instruction is proper when: (1) the defendant denies any knowledge of wrongdoing, and (2) there is enough evidence to infer that he deliberately avoided such knowledge. *United States v. Fallon*, 348 F.3d 248, 253 (7th Cir. 2003).  Kisting focuses on the second prong.  Evidence that a defendant purposefully curtailed his normal curiosity or failed to ask questions supports an inference of deliberate avoidance. *United States v. Craig*, 178 F.3d 891, 897-98 (7th Cir. 1999).

We cannot accept Kisting's contention that the jury faced a stark black or white choice.  His presence at the dealership was not the only fact that could have led a jury to believe that he deliberately avoided learning whether he actually won the raffle.  The government contends that a "normally curious person" in Kisting's position would have scrutinized the ticket after being told he had won, asked why his motorcycle model was an upgrade over the model listed on the ticket, questioned why he was picking up the bike at a dealership in Manteno rather than the Mount Vernon dealership named in the raffle ticket, or interacted with the bar that sponsored the raffle rather than Linder when it came time to claim his prize.  We agree that a reasonable jury could have found that a "normally curious person," when told he won a raffle, would have scrutinized the ticket, questioned any apparent disparities, and at least initiated some interaction with the organization

sponsoring the raffle. Kisting, however, testified that, even after Linder called with the good news, he merely "glanced at" the raffle ticket, never called or visited the bar in Joliet that sponsored the "raffle," and let Linder arrange the entire acquisition of the motorcycle. Such are not the actions (or lack thereof) one would expect from someone who just hit a jackpot.

Thus the trial evidence did not present, as Kisting claims, a case of a binary choice between the extremes of actual knowledge and complete innocence. A rational jury instead could have seen a third, intermediate possibility: deliberate avoidance. *See United States v. Carrillo*, 269 F.3d 761, 769 (7th Cir. 2001) (explaining that government may proceed on both actual-knowledge theory and conscious-avoidance theory). And this is what distinguishes Kisting's case from the decision he principally relies on, *United States v. Giovannetti*, 919 F.2d 1223 (7th Cir. 1990). In *Giovanetti* the jury truly was presented with a "binary choice" because there was no evidence that a landlord, charged with aiding and abetting a gambling operation for renting his house to gamblers, deliberately avoided learning the truth about what the renters were up to. *Id*. at 1228. We held that the ostrich instruction was inappropriate where the only evidence to support it was the fact that the landlord didn't make a special trip to the house to see what was going on. *Id*. On that record, it could not reasonably be said that the landlord deliberately avoided acquiring knowledge about what was going on. The landlord–unlike Captain Renault (Claude Rains) in Casablanca–could say with a straight face that he was "shocked to find that gambling" was going on under his nose. Kisting, on the other hand, was directly presented with many facts that would have given a normally curious person every reason to question whether he had really won an expensive motorcycle in a raffle. Accordingly, Judge Reinhard did not err in giving the deliberate avoidance ostrich instruction to the jury.

Kisting also argues that the judge misapplied the guidelines by adding two levels under U.S.S.G. § 3C1.1 for obstruction of justice based on a finding that perjury was committed at the trial. Kisting contends that: (1) the perjury finding was not specific enough to meet the standard under *United States v. Dunnigan*, 507 U.S. 87, 95 (1993); (2) the evidence does not support a finding of perjury; and (3) the increase in offense level penalized him for exercising his right to testify. We review Kisting's challenge to the judge's factual findings under § 3C1.1 for clear error, *Craig*, 178 F.3d at 900, while his second and third challenges raise questions of law we review de novo, *see United States. v. Carroll,* 412 F.3d 787, 793 (7th Cir. 2005).

Kisting generally argues that the finding of perjury was not specific enough. True, a sentencing judge must support an obstruction finding with a specific determination that a defendant testified falsely about a material matter with the intent to do so, rather than as a result of mistake, faulty memory, or confusion. *Dunnigan*, 507 U.S. at 94-95. Here, the judge found that Kisting was "untruthful"

about a matter that was "the heart of the case" and that he knew "he was receiving a gift." Although the judge did not identify the perjurious statement by line in the transcript, he highlighted the testimony he found false—Kisting's denial of knowingly receiving the motorcycle as a gift—and that was sufficient. *See Craig*, 178 F.3d at 901.

Clearly, as the judge noted, Kisting "had to know and I find did know" that the raffle ticket was subterfuge. According to Kisting, the finding that he "*had to have known*" the raffle was a sham does not support the perjury finding because his testimony that *he did not actually know* the raffle was a sham could still be true. But the judge explicitly found that Kisting had actual knowledge that the raffle ticket was really a gift. On this record, that finding is easily supportable**.**

Finally, Kisting argues that because Schreier obtained a lower sentence for the same offense without testifying, he (Kisting) was penalized for exercising his right to take the stand in his own defense. This contention is frivolous. The right to testify does not include a right to commit perjury, and the judge correctly recognized that Shreier received a lower sentence because he pleaded guilty and earned a reduction under U.S.S.G. § 3E1.1 for acceptance of responsibility. Unlike Shreier, Kisting was penalized for lying when he testified. He was not penalized for testifying.

The judgment of the district court is AFFIRMED.