# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 02-2226

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

PAUL KELLY,

*Defendant-Appellant.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 CR 497—**James B. Moran**, *Judge.*

———————

ARGUED JANUARY 13, 2003—DECIDED JULY 24, 2003

———————

Before POSNER, KANNE, and DIANE P. WOOD, *Circuit Judges.*

DIANE P. WOOD, *Circuit Judge.* Paul Kelly pleaded guilty to conspiracy to import cocaine and heroin into the United States in violation of 21 U.S.C. § 963. The plea agreement provided that he would cooperate fully with the investigation of his associates, and in return the government would recommend a sentence of two-thirds of the low end of the applicable sentencing guidelines, pursuant to U.S. Sentencing Guidelines (U.S.S.G.) § 5K1.1 and 18 U.S.C. § 3553(e). When Kelly refused to accompany authorities on a trip to identify the residence of a possible co-conspirator, however, the government asserted that Kelly had breached the agreement. The district court, without making a formal

determination that Kelly's actions amounted to a substantial breach, declared the plea agreement to be null and void and reinstated a plea of not guilty. Kelly then quickly entered a second plea of guilty when the district court suggested that "all" of his previous statements would be admissible against him at trial. Kelly now seeks specific performance of the original plea agreement, challenging both the district court's failure to make a formal determination of the materiality of his alleged breach of the first agreement and also properly to ascertain the voluntariness of his second plea. Having considered his arguments, we conclude that the district court did not err in either respect, and we therefore affirm its judgment.

# I

In late 1998 and early 1999, Paul Kelly initiated a drug smuggling operation using young women and babies as mules. Heroin and cocaine were smuggled into the United States either in cans of baby formula or in packages inserted into the women's vaginas. Using this scheme, Kelly organized at least seven different trips to Panama to obtain drugs. This continued until May 1999, when U.S. Customs stopped one of Kelly's female drug couriers and discovered the drugs.

Through the cooperation of the intercepted courier, Kelly was arrested and charged with a single count of conspiracy to import illegal substances in violation of 21 U.S.C. § 963. Kelly pleaded guilty pursuant to a plea agreement. This agreement detailed Kelly's involvement in each of the seven trips, including Kelly's recruitment of female couriers, his purchase of plane tickets for them, his payment of their other travel expenses, his provision of transportation to the airport, his setting up the meetings between the couriers and his drug source in Panama, and his taking possession of drugs upon their return to the United States. In at least

one case, the agreement continued, Kelly traveled along with one of his couriers. In addition, the agreement provided that Kelly would "fully and truthfully cooperate with the government in any matter" in which he was called upon to cooperate. In return, the government agreed to "make known to the sentencing judge the extent of defendant's cooperation, and, assuming the defendant's full and truthful cooperation, shall move the Court, pursuant to Sentencing Guideline 5K1.1 and 18 U.S.C. § 3553(e), to depart from the applicable . . . range" and to recommend a sentence of "two-thirds of the low end of the applicable sentencing guideline range."

At sentencing, the government informed the district court that it would not move for a downward departure because Kelly had failed to cooperate fully pursuant to the plea agreement. The alleged failure of cooperation stemmed from Kelly's unwillingness to travel with government agents to a Chicago neighborhood to locate the residence of a possible co-conspirator known only as "Debbie." Kelly's outright refusal to take part in this expedition led to the following exchange:

> THE COURT: Well, the problem is that I can't downwardly depart unless the government moves, and the government isn't prepared to move. It would certainly seem to me that it would make life simpler for everybody, particularly Mr. Kelly, if he just went out and did the best he could.
>
> MR. LEVINE (for the United States): That's all we are asking.
>
> MR. BEAL (for the defense): Perhaps I should confer with Mr. Kelly.
>
> [Discussion off the record.]
>
> MR. BEAL: Your Honor, our position has not changed. I'm sorry.

THE COURT: Well, if that's the case, then the government isn't going to move for a downward departure. If the government doesn't move for a downward departure, then that voids the plea agreement. We reinstate a plea of not guilty and go back to square one, although all the statements that you have made, Mr. Kelly, they don't get expunged.

MR. KELLY: Okay.

THE COURT: The government can still use those.

MR. KELLY: Okay, I understand that.

At the conclusion of this exchange, Kelly entered a blind plea of guilty based on the facts stipulated in the original plea agreement. The district court then conducted a Rule 11 colloquy and sentenced Kelly to 192 months in prison. Kelly now appeals.

## II

Kelly advances two claims on appeal, both of which arise from the district court's comments we just quoted. First, Kelly contends that the district court violated his right to due process by failing to enter a formal finding that Kelly's refusal to participate in the ride-along amounted to a substantial breach of the plea agreement, in direct contravention of *United States v. Lezine*, 166 F.3d 895 (7th Cir. 1999). Second, Kelly argues that the district court's suggestion near the end of the colloquy that "all the statements" made by Kelly would be admissible at trial rendered involuntary his decision to enter a second guilty plea.

## A

We turn first to the question whether the district court erred by failing to make a formal finding that Kelly's re-

fusal to go on the ride-along with federal investigators placed him in substantial breach of the plea agreement. This is a question of law subject to *de novo* review. See *Lezine*, 166 F.3d at 900.

Kelly's principal argument is that the district court's failure to make a formal determination that he had substantially breached the plea agreement is directly contrary to our holding in *Lezine*. In that case, the district court made no formal determination that the defendant's lack of cooperation amounted to a substantial breach of a plea agreement that was nearly identical to the one entered into by Kelly. We held that due process requires that the district court hold an evidentiary hearing and make a formal finding of breach prior to voiding a plea agreement. *Id.* at 901; see also *United States v. Ataya*, 864 F.2d 1324, 1330 (7th Cir. 1988); *United States v. Verrusio*, 803 F.2d 885, 888-89 (7th Cir. 1986).

Our task here is made easier by the government's concession that the district court indeed did not meet its obligations under *Lezine*, and so we can jump immediately to the question whether that failure amounts to reversible error. On this point, we agree with the government that Kelly's refusal to take part in the ride-along amounted to substantial breach of the agreement, rendering harmless any error the court may have made in this respect.

Plea agreements are treated like contracts, see *United States v. Ingram*, 979 F.2d 1179, 1184 (7th Cir. 1992); *Ataya*, 864 F.2d at 1329, and so our determination of breach must be made "in light of the parties' reasonable expectations" upon entering the agreement, see *United States v. Schilling*, 142 F.3d 388, 395 (7th Cir. 1998); *Ataya*, 864 F.2d at 1330. In general, a defendant's substantial breach of an unambiguous term of a plea agreement frees the government to rescind the deal. See *United States v. Ramunno*,

133 F.3d 476, 484 (7th Cir. 1998); *United States v. Hauptman*, 111 F.3d 48, 51 (7th Cir. 1997). In addition, in order to pull out of a plea agreement, the government need only prove substantial breach on the part of the defendant by a preponderance of the evidence. See *United States v. Frazier*, 213 F.3d 409, 419 (7th Cir. 2000); *Ataya*, 864 F.2d at 1337.

With these principles in mind, we turn to the question whether the lack of a finding on the substantiality of Kelly's breach amounted to harmless error. In our view, the agreement Kelly signed contemplated Kelly's cooperation in whatever way the government reasonably requested, including assistance in determining the whereabouts of co-conspirators. Indeed, both parties should have been able to anticipate *ex ante* that this would be one of the principal forms that cooperation would take. See *Ataya*, 864 F.2d at 1331 (noting that the defendant's cooperation in an investigation related to his counterfeiting operations was undoubtedly a part of the government's "reasonable expectations" in entering the agreement). This is particularly the case here, since Kelly does not contend that the government's request was made in bad faith, or that Kelly's participation would endanger Kelly or his family. Indeed, Kelly's only response—both at the sentencing hearing and on this appeal—is that he was not in substantial breach of the plea agreement because he would not have been able to identify the house of the mysterious "Debbie," rendering his participation pointless. We are unmoved by this argument. The standard for assessing the reasonable expectations of the parties is an objective one. See *United States v. Fields*, 766 F.2d 1161, 1168 (7th Cir. 1985), and so Kelly's subjective beliefs about the utility of his cooperation is simply not relevant to our inquiry. Instead, we find that Kelly's participation in a ride-along to help finger potential co-conspirators was consistent with the reasonable expectations of the parties in entering into the plea agreement. Kelly's outright

refusal to do so was thus a substantial breach of that agreement.

Our conclusion is bolstered by two final considerations. First, while several of our sister circuits have held that the government's breach of a plea agreement is never subject to harmless-error analysis, see, *e.g.*, *United States v. Mondragon*, 228 F.3d 978, 981 (9th Cir. 2000); *United States v. Nolan-Cooper*, 155 F.3d 221, 236 (3d Cir. 1998); *United States v. Clark*, 55 F.3d 9, 13-14 (1st Cir. 1995), we have found that a *judicial* failure to make formal findings of substantial breach can be harmless where there was sufficient evidence before the district court to make such a finding. *Lezine*, 166 F.3d at 903-04. Second, it is well-settled that in the absence of a plea agreement the government has broad discretion to withhold a § 5K1.1 motion. See *Wade v. United States*, 504 U.S. 181, 185-86 (1992). Thus, while the district court jumped over too many steps in declaring that a downward departure would not be available unless the government so moved, its failure to make a formal finding to that effect probably resulted from its sense that it was obvious to all concerned that an outright refusal to perform conduct requested by the government pursuant to a cooperation agreement amounted to a substantial breach of that agreement.

We conclude that Kelly breached his plea agreement with the government through his refusal to take part in the ride-along and, accordingly, that the failure of the district court to hold an evidentiary hearing and to enter a formal finding to that effect was harmless error.


**B**

That leads us to Kelly's attempt to withdraw his second guilty plea as involuntarily entered. Under normal circumstances, we review a district court's determination that a

guilty plea was knowing and voluntary by asking "whether, looking at the total circumstances surrounding the plea, the defendant was informed of his or her rights." *United States v. Mitchell*, 58 F.3d 1221, 1224 (7th Cir. 1995) (quoting *United States v. DeCicco*, 899 F.2d 1531, 1534 (7th Cir. 1990)). In this case, however, the government argues that the more demanding plain error standard should apply because Kelly did not move to withdraw the plea of guilty while he was still before the district court. See *United States v. Gilliam*, 255 F.3d 428, 433 (7th Cir. 2001); *United States v. Driver*, 242 F.3d 767, 769 (7th Cir. 2001). (It might have added that it is unclear that a mistake in this context about what evidence would be admissible at a later trial might not give rise to reversible error in any event, by analogy to *Ohler v. United States*, 529 U.S. 753 (2000), and *Luce v. United States*, 469 U.S. 38 (1984). But it did not, and we are content to resolve the case as both parties have presented it and save that argument for another day.)

Our review of the record satisfies us that Kelly did not raise the knowingness and voluntariness of his second plea before the district court and so has forfeited the issue. The voiding of the initial plea agreement and the entry of a second guilty plea took place on March 25, 2002. Kelly said nothing about withdrawing his plea at the sentencing hearing, which took place on May 2, 2002, and was the first opportunity he had in open court to voice an objection. (He certainly could have filed something in writing before that, but he did not.) At the hearing, the district court was careful to ask defense counsel, "Are there objections to [the PSR] other than those which have already been set forth?" Defense counsel responded no, and the entire hearing was then devoted to a line-by-line analysis of the factual section of the PSR and, in particular, to a dispute about drug amounts. Later, on May 10, 2002, Kelly filed with the district court along with his notice of appeal a long, *pro se* motion requesting a copy of the Rule 11 hearing. His motion

was accompanied by a document titled, "Defendant's Pro Se Tentative Sentencing Position Paper." This document outlines a variety of claims, including Kelly's version of the offense, as well as analysis relating to acceptance of responsibility, base offense level, guidelines enhancements, criminal history computation, mental and emotional health, entrapment, coercion, duress, diminished capacity, post-offense rehabilitation, and convergence of factors. One very small part of this filing references the plea agreement, but there Kelly simply asserts his belief that the court is not bound by specific drug amounts or levels of departure contained therein. There is no discussion of the knowingness or voluntariness of the subsequent plea, and no hint of a request actually to withdraw the plea.

Given Kelly's failure to raise the argument below, the only factor that cuts against our finding forfeiture is that Kelly appears to have had trouble with his defense counsel during this critical period. The May 10 motion and position paper specifically states that Kelly is requesting a copy of the Rule 11 proceeding because his repeated efforts to obtain those documents from trial counsel have proven unavailing. Kelly might therefore have argued that his forfeiture resulted from incompetent counsel. See, *e.g.*, *United States v. Jeffries*, 265 F.3d 556, 558-59 (7th Cir. 2001). But Kelly has wisely refrained from making any such argument in his brief here, perhaps in response to the well-established principle that the trial record is normally insufficient for an evaluation of effective assistance claims. See generally *Massaro v. United States*, ___ U.S. ___, 123 S.Ct. 1690 (2003). That leaves us with a forfeited claim, which we evaluate under the plain error standard of review set forth in *United States v. Olano*, 507 U.S. 725 (1993). Kelly can prevail on this claim only if he can show that (1) an error has occurred, (2) it was "plain," (3) it affected his substantial rights, and (4) it seriously affected the fairness, integrity, or public reputation of the proceedings. See *id.* at 736-

37; see also *Johnson v. United States*, 520 U.S. 461, 466-67 (1997).

Turning to the merits of Kelly's claim, we begin with the well-established principles governing the withdrawal of guilty pleas. Because a defendant waives many constitutional rights by pleading guilty, due process requires that a guilty plea must be entered knowingly and voluntarily, with the advice of competent counsel. See *Brady v. United States*, 397 U.S. 742, 748 (1970); *United States v. Wagner*, 996 F.2d 906, 912 (7th Cir. 1993). "The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). Here, Kelly points to two ways in which his second guilty plea did not meet this standard. The first is the failure of the district court to hold an evidentiary hearing or to make a formal finding of breach as to the original plea agreement. The second is the possible miscommunication by the district court concerning the admissibility of the statements Kelly had previously made pursuant to that agreement.

As to the first ground, we fail to see how the lack of an evidentiary hearing and formal determination of breach as to the original plea agreement impugns the voluntariness of the subsequent plea. As the government points out, Kelly could easily have entered a conditional guilty plea at that time, reserving the right to contest on appeal the district court's allegedly erroneous treatment of the first plea agreement and then, if the appeal was successful, to withdraw the second plea. See FED. R. CRIM. P. 11(a)(2); *United States v. Cain*, 155 F.3d 840, 842-43 (7th Cir. 1998). The history of the first plea may throw light on why Kelly was willing to enter a blind plea, but it is not relevant to the question whether Kelly knowingly and intelligently chose this course. The district court's second Rule 11 colloquy, conducted with reference to the second plea, was designed to

elicit any reservations Kelly might have had at that later point in time. We are particularly reluctant to allow a defendant to withdraw a guilty plea where, as here, the formal inquiries required by Rule 11 have been followed. See *United States v. Coonce*, 961 F.2d 1268, 1276 (7th Cir. 1992). In short, the fact that Kelly or his counsel may have labored under a misapprehension about the court's obligations in finding a substantial breach of the first plea agreement is not enough to invalidate his subsequent plea.

That leaves the possible misrepresentation by the district court of the admissibility of Kelly's past statements made pursuant to the original plea agreement. Upon reinstating Kelly's plea of not guilty, the district court informed Kelly that "all the statements that you have made, Mr. Kelly, they don't get expunged. . . . The government can still use those." Kelly argues that this statement by the district court left the impression that all of his prior statements, including those made as part of the plea agreement itself, would be admissible against him at trial.

The district court's assertion was only partially correct, since any statements Kelly made in the plea agreement and related discussions would have been inadmissible at trial. See FED. R. CRIM. P. 11(e)(6); see also *United States v. Brumley*, 217 F.3d 905, 909 (7th Cir. 2000); *United States v. Lloyd*, 43 F.3d 1183, 1186 (8th Cir. 1994); *United States v. White*, 617 F.2d 1131, 1134 (5th Cir. 1980). Only those statements made either before or after the plea agreement and formal negotiations would have been admissible against Kelly at trial. This falls short of "all" of the statements Kelly made to authorities in the months between his arrest and his sentencing.

Even so, Kelly's lawyer made no objection to the court's statement at the time of the colloquy we reproduced above, or later during the second Rule 11 colloquy, and so once again, our review is for plain error. *United States v. Vonn*,

535 U.S. 55, 59 (2002). In that light, we conclude that any misstatement of the law the district court might have made during its colloquy with Kelly does not entitle Kelly to further proceedings. Kelly entered into the initial plea agreement more than a year and a half prior to the sentencing hearing. During the intervening period, he made numerous statements to the government about the crimes for which he was charged. As the government notes, many of these statements were cumulative of statements that were made in the actual plea agreement, particularly the extensive details of the seven trips to Panama that Kelly provided in his post-arrest interview. Kelly's only plausible argument on this score is that he considered the statements made in connection with the plea agreement to be particularly damning, perhaps because they were made to prosecutors, in writing, and in a formal setting. But Kelly's repeated inculpatory statements over more than a year of cooperation, which would have been admissible, made the district court's statement functionally accurate, even if not technically accurate, on this particular record. Kelly was aware of these many meetings and his many statements, and that alone would have led a rational person to think that an immediate second plea was the only serious option.

Moreover, even if we were to agree with Kelly that the court's error occurred, and that it was "plain" or obvious, he would still need to show that it affected his substantial rights. In light of the overwhelming evidence of his guilt, this is something he simply cannot do. As we said before, a more precise articulation by the district court of the relevant legal principles governing the admissibility of Kelly's past statements would not have altered his decision-making calculus. As a result, whatever legal errors the district court made in its overly general statement about the admissibility of Kelly's prior statements did not affect his substantial rights and did not impugn the integrity of the pro-

ceedings as a whole. Under the plain error standard of review that governs our analysis, Kelly cannot prevail.

## III

We AFFIRM the judgment of the district court.

A true Copy:

       Teste:

                _____
                *Clerk of the United States Court of*
                *Appeals for the Seventh Circuit*