NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued April 9, 2008
Decided August 5, 2008

**Before**

RICHARD A. POSNER,  *Circuit Judge*

KENNETH F. RIPPLE,  *Circuit Judge*

DANIEL A. MANION,  *Circuit Judge*

| | |
|---|---|
| No. 07-3311 | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| United States of America, *Plaintiff-Appellee*, | |
| | No. 06 CR 806 |
| v. | |
| | **Charles P. Kocoras**, *Judge*. |
| Adam Peterson, *Defendant-Appellant*. | |

**O R D E R**

Pursuant to a plea agreement, Adam Peterson pleaded guilty to wire fraud in violation of 18 U.S.C. § 1343.  Peterson filed his milder version of the crime he committed.  As a result, the government withdrew its recommendation for a reduction for acceptance of responsibility in Peterson's offense level under the United States Sentencing Guidelines and sought a two-level enhancement for obstruction of justice.

The district court sentenced Peterson based on the government's revised sentencing recommendation, and Peterson appeals. We AFFIRM.

I.

Peterson was the president and chief executive officer of Atlas Financial Corporation ("Atlas"). Atlas contracted with Automatic Data Processing ("ADP") to provide payroll direct deposit service for Atlas's three employees, one of whom was Peterson. Under Atlas's contract with ADP, ADP would deposit funds via a wire transfer directly to the individual employee's bank account. In exchange, Atlas was required, through its contract, to have sufficient funds to cover the cost of each ADP wire transfer prior to making any request for funds. Once ADP made the transfer, Atlas was responsible for repaying the cost of each deposit.

By November 2001, Atlas encountered financial difficulties and was regularly carrying a negative balance on its bank account. Apparently the employees had not been paid for several months. At Peterson's direction, another Atlas employee contacted ADP and requested that a total of $394,075.91 be directly deposited into the Atlas employees' bank accounts as well as separate tax withholding accounts. Peterson knew at that time Atlas did not have the funds to cover the transfer. After making the transfers on November 7, 2001, ADP contacted Atlas on November 14, 2001, about the funds. Although Peterson knew that Atlas did not have the money, he assured ADP that it would be paid for the transfer. On or about November 26, 2001, Peterson faxed ADP a fraudulent wire transfer form that showed that funds had been wired to ADP's bank account to cover the funds Atlas owed ADP. Peterson knew, however, that Atlas had not transferred any funds into ADP's bank account.

Peterson was later charged by indictment with four counts of wire fraud in violation of 18 U.S.C. § 1343 and pleaded guilty on April 19, 2007. As part of the plea agreement, Peterson stated that he was admitting the facts set forth in the plea agreement ("agreement"). The agreement also set forth a preliminary sentencing Guideline calculation with a range of 18-24 months, as well as noting that Peterson had

> clearly demonstrated a recognition and affirmative acceptance of personal
> responsibility for his criminal conduct. If the government does not receive

additional evidence in conflict with this provision, and if the defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the U.S. Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

The government agreed that it would recommend an appropriate sentence within the Guideline range. Finally, the agreement set forth that "it shall be a breach of this Plea Agreement for either party to present or advocate a position inconsistent with the agreed calculations set forth [in the preceding agreement paragraphs]."

The district court ordered the parties to file their versions of the offense conduct by May 4, 2007. In his statement, Peterson, through his attorney, noted that "[d]uring this period of time [when he committed the underlying crime], [he] was negotiating with lenders to obtain a bridge loan to cover operating funds for Atlas, as well as give it sufficient capital to put down payments on certain apartment properties it wished to purchase." He went on to state that "[w]hile [he] knew there was not sufficient money in Atlas' bank account to reimburse ADP, he was confident that the cash infusion for which he had been negotiating was imminent and that he would have the funds shortly to cover the deposits made to ADP." Peterson described financing negotiations for a $3.5 million "working capital line" and a $100 million "warehouse line" that occurred between Michael Sidebottom, acting on his behalf, and Ridgely Potter of Arbor Commercial Mortgage ("Arbor").

The government responded with its own version of the offense conduct and a sentencing memorandum in which it asserted that Peterson's representations about relying on an impending loan were false. Specifically, the government pointed to details from a Secret Service investigation that showed that Arbor was not in the business of making the type of loans Peterson claimed he sought from it, much less that there was a pending loan. In light of this information, the government noted that it would be withdrawing its recommendation for a reduction in Peterson's offense level for acceptance of responsibility and that it would be seeking an enhancement for obstruction of justice according to United States Sentencing Guideline § 3C1.1. The government also stated that it would present additional information at sentencing regarding Peterson's untruthfulness. The government filed a second sentencing memorandum in which it disclosed information regarding

Peterson's involvement with a forgery relating to a $65 million deal, past embezzlement involving a $1.2 million wire transfer, and deception relating to finances and a forged court order submitted to his wife during the course of their divorce proceeding. In addition to requesting a two-level enhancement to Peterson's Guideline offense level under to § 3C1.1 for obstruction of justice, the government reiterated its intention to withdraw the recommendation for a three-level reduction it had planned to recommend for acceptance of responsibility pursuant to § 3E1.1.

Before Peterson and the government filed their versions of the offense conduct, the United States Probation Office had recommended that Peterson be assessed a total offense level of fifteen, which included a base offense level of six, six-level enhancement for a fraudulent scheme involving more than $200,000, a two-level reduction for acceptance of responsibility, and a one level reduction for cooperation and entry of a plea. With a Criminal History Category I, the resulting Guideline range was eighteen to twenty-four months' imprisonment. Following the parties' filings, the probation office amended its presentence report and recommended that Peterson be assessed a total offense level of twenty-four which included the a base offense level of six, a specific offense level of sixteen, and a two-level increase for obstruction of justice with no reduction for acceptance of responsibility. The specific offense level recommendation took into account the $1.2 million wire transfer as relevant conduct under § 1B1.3. With Criminal History Category I, the resulting Guideline range was fifty-one to sixty-three months' imprisonment.

At sentencing, the district court heard argument from the parties. Peterson's attorney objected to the government's position arguing that it violated the plea agreement. The district court did not rule on Peterson's breach argument, but instead addressed the issues relating to relevant conduct under § 1B1.3. It concluded that the $1.2 million wire transfer did not constitute relevant conduct under § 1B1.3 and assigned the originally recommended twelve-level offense level for a fraudulent scheme involving more than $200,000. The district court also found that there was no good faith basis for Peterson to assert that a loan was forthcoming and as such assessed Peterson a two-level increase in his offense level for obstruction of justice and no reduction for acceptance of responsibility. The district court ultimately concluded that an increase for obstruction of justice was warranted because Peterson's assertion regarding the loan was "an attempt for the Probation officer, and ultimately for [the district court] to view this conduct in a more benign way than it is otherwise deserving." After concluding that Peterson's offense level was twenty with a Criminal History Category I for a Guideline range of thirty-three to

forty-one months' imprisonment, the district court considered the information the government provided in its second sentencing memorandum when considering the factors set forth in 18 U.S.C. § 3553. The district court noted that the statute is broader than the Guidelines in terms of conduct considerations. The district court then sentenced Peterson to forty-one months' imprisonment, three years' supervised release, restitution of $248,355.00, and a special assessment of $100.00. Peterson appeals.

## II.

On appeal, Peterson argues that the government breached the agreement by seeking a sentence greater than the Guideline range of 18 to 24 months' imprisonment as set forth in the plea agreement. Peterson contends that the government knew at the time of the agreement that he thought that a loan was forthcoming, so his continuation of this position in his version of the offense conduct (filed by his attorney) did not constitute new evidence. Because this was not newly discovered evidence, Peterson asserts that the statement did not give the government license to breach the agreement. Peterson also argues that the district court erred in using his attorney's statements as set forth in his version of offense conduct as a basis for finding that Peterson obstructed justice and did not accept responsibility. Finally, Peterson contends that the district court erred in considering non-relevant conduct in fashioning his sentence. We address each of these arguments in turn.[1]

Before addressing whether there was a breach of the plea agreement, we must first address Peterson's contention asserted throughout his brief and by his attorney at oral argument that the version of the offense conduct was a statement filed by his attorney and as such is not a repudiation by Peterson of acceptance of responsibility or an attempt to obstruct justice. In other words, Peterson asserts that he is not responsible for the version of the offense conduct composed and filed by his attorney and should not have been denied acceptance of responsibility and received additional points to his offense level for obstruction of justice based on arguments asserted by his attorney. Peterson has Masters degree in Business Administration and was sophisticated enough to run his own financial

---

[1]We note that Peterson included additional case citations and expansively developed his arguments only once he got to his reply brief. As it is, this "is too little, too late." *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 528 (7th Cir. 2005). These arguments should have been included in the opening brief to enable the government the opportunity to respond and the court the ability to address them.

services business. Peterson also responded in the affirmative to the district court's inquiry at the beginning of sentencing that he understood all of the documents at issue, and he took advantage of the opportunity the district court gave him to speak before the it imposed sentence. At neither of those junctures did Peterson disavow the position set forth in the version of the offense conduct filed by his attorney. Therefore, we conclude that the district court properly attributed that version of the offense conduct to Peterson. *Cf. United States v. Dong Jim Chen*, 497 F.3d 718, 721 (7th Cir. 2007) (holding that the district court properly attributed the denials of violent conduct to the defendant where he had the assistance of an interpreter, had eleven years of education, made the same protests as his attorney, demonstrated an understanding of the proceedings, and was able to communicate with his attorney about the proceedings).

In short, the statement of the offense conduct is attributable to Peterson. We now turn to Peterson's argument that the government breached the plea agreement by seeking a Guidleline sentence greater than that set forth in the plea agreement. The government claims that Peterson failed to satisfy his obligation to continue to accept responsibility thereby freeing the government from its obligation to recommend a reduction for acceptance of responsibility.

We review factual determinations surrounding a plea agreement for clear error. *United States v. Collins*, 503 F.3d 616, 618 (7th Cir. 2007). Where there are no factual determinations at issue, we review the issue of whether a plea agreement has been breached de novo. *United States v. Schilling*, 142 F.3d 388, 394 (7th Cir. 1998). In making these determinations, it is worth noting that

> [p]lea agreements are treated like contracts, and so our determination of breach must be made in light of the parties' reasonable expectations upon entering the agreement. In general, a defendant's substantial breach of an unambiguous term of a plea agreement frees the government to rescind the deal. In addition, in order to pull out of a plea agreement, the government need only prove substantial breach on the part of the defendant by a preponderance of the evidence.

*United States v. Kelly*, 337 F.3d 897, 901 (7th Cir. 2003) (internal citations and quotations omitted).

The government may not unilaterally determine that a defendant has breached the plea agreement. *United States v. Frazier*, 213 F.3d 409, 419 (7th Cir. 2000) (citing *United States v. Lezine*, 166 F.3d 895 (7th Cir. 1999)). Rather, due process requires that an evidentiary hearing be conducted to determine if a substantial breach of the agreement has occurred, and the breach must be proven by a preponderance of the evidence. *Id.* In the event that the district court fails to conduct the requisite evidentiary hearing, we have held that "a *judicial* failure to make formal findings of substantial breach can be harmless where there was sufficient evidence before the district court to make such a finding." *Kelly*, 337 F.3d at 902.

While neither party raises this issue in the briefs, we note that the district court did not address Peterson's contention that the government breached the plea agreement nor did it conduct an evidentiary hearing to determine whether the government breached the plea agreement as Peterson asserted. However, as we previously held in *Kelly*, we are not required to remand for formal findings if there was sufficient evidence before the district court to conclude that there was a substantial breach of the plea agreement. The district court had before it the Secret Service investigation report which catalogued interviews with various officials at Arbor Commercial Mortgage which showed that Arbor was not in the business of making the types of loans Peterson contended he sought, there was no record of Peterson or Atlas Financial in Arbor's databases, and none of the employees had a recollection of the letter Peterson purportedly sent to Arbor. Peterson does not contest the veracity of this report.

The plea agreement provided: "If the government does not receive additional evidence in conflict with this provision, *and if defendant continues to accept responsibility* for his actions within the meaning of Guideline §3E1.1(a) . . . a two-level reduction in the offense level is appropriate." (emphasis added). Application Note 3 of § 3E1.1 notes that evidence of the entry of a guilty plea and truthful admission of conduct comprising the offense of conviction "may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility." Moreover, Application Note 4 provides that "conduct resulting in an enhancement under § 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct."

In this case, the district court found that Peterson was making a false statement,

> if he says, 'There is a loan forthcoming. I believe that to be so. And that is
> going to take care of all of the problems.' . . . There is no basis at all to believe
> – that I can see in any of the evidence – that there was any loan forthcoming
> from Arbor or anybody else to make this whole ADP transfer of funds that
> was improperly received, based on a false instrument. Okay? Nothing. And
> the idea that the belief was genuinely held and, therefore, couldn't be
> fraudulent, is not so. All kinds of cases take place where people spout things
> that they do not honestly believe at all. And crimes are predicated on the
> falsehood of a statement that something is about to happen. That is where
> we are here.

By asserting facts that were not true, namely that he had been in the process of procuring a loan with Arbor, Peterson failed to continue to accept responsibility as required by the plea agreement. Peterson had an obligation under the agreement to accept responsibility, regardless of whether the government received additional, new evidence. Once the government learned of Peterson's obstructive conduct, the government was free to withdraw from the plea agreement on the ground that Peterson was not only not accepting responsibility, but he was attempting to deceive both the probation office and the district court. It was not Peterson's attorney's characterization of the loan as imminent that was problematic, but rather the very fact that Peterson contended that there was going to be a loan when the facts did not support such a contention. Based on the information provided in the Secret Service report as well as the terms of the agreement, we find that there was sufficient evidence to find that the government did not breach the plea agreement, substantially or otherwise. Rather, it was Peterson who breached the plea agreement.

Peterson argues that his "subjective belief as to the likelihood of the loans being finalized is not conduct or commentary which indicates that he does not accept full responsibility for his criminal conduct." We disagree. Peterson's characterization of events was inconsistent with acceptance of responsibility. First, Peterson does not challenge the district court's factual finding quoted above that Peterson's belief was a false belief. Moreover, Peterson knew before the date of the plea, based on the discovery propounded by the government, that the loans he claims he tried to obtain were not possible. Despite this knowledge, he continued to attempt to lead the probation office and district court to believe that the loans just did not come through in time. In his version of the offense conduct, Peterson did not state or even allude to the fact that not only did the loans not come through in time, but that they were never coming at all. Deception can be achieved

through commission or by omission. In this instance, Peterson attempted to mislead the district court through omission of key information. He knew the loans were never coming, yet he failed to include this key fact when he relayed his version of the offense conduct to the probation office and the district court. The plea agreement did not obligate the government to sit silently while Peterson presented a misleading version of the offense that was inconsistent with his obligation to continue to accept responsibility. Accordingly, we conclude that the government did not breach the plea agreement.

Peterson's sole argument challenging the district court's finding on acceptance of responsibility is that he cannot be deemed to have not accepted responsibility based on what his attorney had written in his submission concerning the offense conduct. "Whether a defendant has accepted responsibility is a factual determination ordinarily reviewed for clear error." *United States v. Silvious*, 512 F.3d 364, 370 (7th Cir. 2008). As we noted above, the district court properly attributed the version of the offense conduct to Peterson filed by his attorney. The district court properly concluded that Peterson's falsification of information regarding the loan was not consistent with accepting responsibility for his crime. Therefore, the district court did not err in concluding that Peterson was not entitled to a reduction in his Guideline offense level for acceptance of responsibility.

Peterson also challenges the district court's assessment of a two-level increase to his offense level for obstruction of justice in accordance with § 3C1.1. Again, Peterson relies on two arguments we have dismissed above: that he is not responsible for the statement of his attorney and the government relies on information that was known to the government prior to the plea agreement. Peterson also contends that "[t]here is nothing in his attorney's statement that attempts to mitigate or excuse his crime. The information was simply an attempt to provide the Probation Department with an overall understanding of the Defendant's state of mind at the time of his commission of the crime."

"We review de novo the adequacy of the district court's obstruction of justice findings and any underlying factual findings for clear error." *United States v. Price*, 516 F.3d 597, 606-07 (7th Cir. 2008) (citation omitted). Section 3C1.1 provides:

> If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense and conviction, and (B) the obstructive conduct related to (i) the defendant's

offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by two-levels.

"'Material' evidence, fact, statement, or information, as used in this section, means evidence, fact, statement, or information that, if believed, would tend to influence or affect the issue under determination." U.S.S.G. § 3C1.1 Application Note 6.

The district court made the following finding regarding Peterson's version of the offense conduct:

[I]f he is spouting a belief that has no basis in reality – I do not think this one does – then it is an obstruction because as the government counsel has argued, it is an attempt for the Probation officer, and ultimately for me, to view this conduct in a more benign way than it was otherwise deserving of.

The district court did not clearly err in making this finding, namely that Peterson was attempting to materially affect his sentence through his version of the offense conduct. In fact, we find Peterson's contention that he was merely providing a broader picture of the circumstances surrounding his crime and not trying to mitigate his responsibility bordering on the absurd. If he was not trying to minimize his culpability for the offense, there was no need to set forth his state of mind, and he could have relied on the facts of the offense conduct set forth in the plea agreement. Therefore, we affirm the district court's assessment of two-levels for obstruction of justice pursuant to § 3C1.1.

Peterson's final argument is that the district court impermissibly considered other allegations of embezzlement and deceit as relevant conduct to enhance his sentence. We review the application of the Guidelines de novo and factual determinations for clear error. *United States v. Gallardo*, 497 F.3d 727, 740 (7th Cir. 2007). Peterson cites § 1B1.3, the Guideline section for relevant conduct, and cases in which this court determined what constitutes relevant conduct under § 1B1.3. The government responds that this information was presented to the district court not as relevant conduct for purposes of calculating Peterson's Guideline range, but rather as considerations for the overall scheme of things when considering the factors set forth in 18 U.S.C. § 3553. Peterson's argument fails because the district court did not consider this additional conduct as relevant conduct pursuant to § 1B1.3. Agreeing with both Peterson and the government, the district court concluded that the additional conduct did not constitute relevant conduct and rejected

probation's proposed 16-level enhancement based on a prior embezzlement.  This other conduct did not impact the district court's Guideline calculation as § 1B1.3 relevant conduct or otherwise.  Therefore, the district court did not improperly consider certain prior acts by Peterson as relevant conduct.[2]

III.

The government did not breach its plea agreement with Peterson, and the district court did not err in assessing an increase for obstruction of justice and by not applying a decrease for acceptance of responsibility to Peterson's Guideline offense level.  Finally, the district court also did not improperly consider past criminal conduct as relevant conduct under § 1B1.3.  We AFFIRM.

---

[2] Because Peterson does not challenge the district court's consideration of prior embezzlement, forgery, and actions during his divorce proceeding in considering the factors set forth in 18 U.S.C. § 3553, we do not address its propriety.